UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MONTANA

| In Re: | Chapter 11 |
|---|---|
| Roman Catholic Bishop of Helena, Montana, a Montana Religious Corporation Sole, | Case No. 14-60074 |
| Debtor-In-Possession | |

**JOINT CHAPTER 11 PLAN OF REORGANIZATION PROPOSED BY
THE ROMAN CATHOLIC BISHOP OF HELENA, MONTANA AND
THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS**

ELSAESSER JARZABEK ANDERSON
ELLIOTT & MACDONALD, CHTD.
J. Ford Elsaesser, Esq.
Bruce A. Anderson, Esq.
320 East Neider Avenue, Suite 102
Coeur d'Alene, ID 83815
Telephone: 208-667-2900
Facsimile: 208-667-2150

*Attorneys for the Debtor and Debtor In Possession*

PACHULSKI STANG ZIEHL & JONES LLP
James I. Stang, Esq.
Ilan D. Scharf, Esq.
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067-4100
Telephone: 310-277-6910
Facsimile: 310-201-0760

*Attorneys for the Official Committee of Unsecured Claimants*

Dated: Helena, Montana
November 17, 2014

**Table of Contents**

SECTION I RULES OF INTERPRETATION ....................................................... 1
SECTION II DEFINITIONS ................................................................................. 2
SECTION III PLAN OBJECTIVES...................................................................... 13
SECTION IV TREATMENT OF UNCLASSIFIED CLAIMS ............................. 13
SECTION V CLASSIFICATION OF CLAIMS .................................................. 15
SECTION VI TREATMENT OF UNIMPAIRED CLASSES OF CLAIMS........... 17
SECTION VII TREATMENT OF IMPAIRED CLASSES OF CLAIMS ............... 19
SECTION VIII ACCEPTANCE OR REJECTION OF PLAN ................................ 22
SECTION IX TRUST........................................................................................... 23
SECTION X MEANS FOR IMPLEMENTATION OF THE PLAN ........................ 27
SECTION XI CONDITIONS PRECEDENT ......................................................... 34
SECTION XII EFFECTS OF PLAN CONFIRMATION AND DISCHARGE......... 35
SECTION XIII TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED
     LEASES........................................................................................... 38
SECTION XIV COMMITMENTS ......................................................................... 39
SECTION XV MISCELLANEOUS PROVISIONS.............................................. 39
SECTION XVI I RECOMMENDATIONS AND CONCLUSION ........................... 47

The Roman Catholic Bishop of Helena, Montana, a Montana Religious Corporation Sole, and the Official Committee of Unsecured Claimants of the Roman Catholic Bishop of Helena, Montana propose the following Plan[1] pursuant to the provisions of Chapter 11 of the Bankruptcy Code.

Reference is made to the Disclosure Statement for this Plan for a discussion of the Debtor's history, businesses, assets, Case, risk factors, summary and analysis of the Plan, and certain other related matters.

Subject to the provisions of Section 1127 of the Bankruptcy Code and those restrictions on modification set forth in Section 15.2 of the Plan, the Debtor and the Committee reserve the right to amend, alter or modify the Plan one or more times before its substantial consummation.

## SECTION I
## RULES OF INTERPRETATION

**1.1**    The rules of construction in Bankruptcy Code Section 102 apply to this Plan to the extent not inconsistent with any other provision in this Section I.

**1.2**    In computing any period of time prescribed or allowed by the Plan, unless otherwise expressly provided, the provisions of Bankruptcy Rule 9006(a) shall apply. If any act under the Plan is required to be performed on a date that is not a Business Day, then the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.  Enlargement of any period of time prescribed or allowed by the Plan shall be governed by the provisions of Bankruptcy Rule 9006(b).

**1.3**    A term that is used in this Plan and that is not defined in this Plan has the meaning attributed to that term, if any, in the Bankruptcy Code or the Bankruptcy Rules.

**1.4**    The definition given to any term or provision in the Plan supersedes and controls any different meaning that may be given to that term or provision in the Bankruptcy Code, the Bankruptcy Rules, the Disclosure Statement or the Trust Agreement.

**1.5**    Whenever it is appropriate from the context, each term, whether stated in the singular or the plural, includes both the singular and the plural. Any reference to a document or instrument being in a particular form or on particular terms means that the document or instrument will be substantially in that form or on those terms.  No material change to the form or terms may be made after the Confirmation Date without the consent of any party materially affected.

**1.6**    Unless otherwise specified, any reference to an existing document means the document as it has been, or may be, amended or supplemented.

---

[1] Capitalized terms used but not defined in this preamble shall have the meanings and definitions ascribed to them in Section II of the Plan.

1

Plan of Reorganization

**1.7** Unless otherwise indicated, the phrase "under the Plan" and the words "herein" and "hereto" and similar words or phrases refer to this Plan in its entirety rather than to only a particular portion of the Plan.

**1.8** Unless otherwise specified, all references to Sections, sections, clauses or exhibits are references to this Plan's Sections, sections, clauses or exhibits.

**1.9** Section captions and headings are used only as convenient references and do not affect the Plan's meaning.

**1.10** All definitions in the Bankruptcy Code and below will be subject to the rules of construction set forth in Section 102 of the Bankruptcy Code. In addition, the use of the words "includes" or "including" is not limiting, and means "including but not limited to" and "including without limitation;" "and/or" means either or both, and the words "related to," "relates to," or "relating to" mean with regard to, by reason of, based on, arising out of, or in any way connected with.

**1.11** Any reference in the Plan to a contract, instrument, release, indenture or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions. Any specific references to promissory notes, deeds of trust or other debt instruments or security documents include any amendments, modifications and extensions thereto.

**1.12** Nothing contained in this Plan constitutes an admission or denial by any party of liability for, or the validity, priority, amount, or extent of any Claim, lien, or security interest asserted against the Debtor or against any third party.

**SECTION II**
**DEFINITIONS**

**2.1** **"Abuse"** means any act of sexual conduct, misconduct, or sexual abuse, or molestation; any other sexually related act, contact, or interaction; indecent assault and/or battery; rape; lascivious behavior; undue familiarity; pedophilia; ephebophilia; assault; battery; corporal punishment; or any other act of physical, psychological, mental, or emotional abuse, humiliation, or intimidation. An act constituting "Abuse" does not require the use of force.

**2.2** **"Abuse Claims Reviewer"** means the person, including the designee of such person, who will assess Tort Claims pursuant to the Allocation Plan. Subject to the Plan's provisions for replacement of the Abuse Claims Reviewer, the Abuse Claims Reviewer is Hon. William B. Bettinelli (retired).

**2.3** **"Abuse Related Contingent Claim"** means any Person's Claim for contribution, indemnity, or reimbursement arising as a result of such Person's liability to pay or defend any Tort Claim.

**2.4** **"Administrative Claim"** means a Claim for payment of an administrative expense of a kind specified in Section 503(b) of the Bankruptcy Code and referred to in Section

2

507(a)(2) of the Bankruptcy Code including the actual, necessary costs and expenses of preserving the Debtor's estate and operating the Debtor's businesses, compensation for professional services and reimbursement of expenses awarded under Sections 330(a) or 331 of the Bankruptcy Code, and all fees and charges assessed against the Debtor's estate under chapter 123 of Title 28, United States Code.

2.5     **"Allocation Plan"** means the protocol which is set forth as Exhibit A to the Plan.

2.6     **"Allowance Date"** means, with respect to a Claim, the date such Claim becomes Allowed.

2.7     **"Allowed"** means, (i) any Claim against the Debtor which has been listed by the Debtor in the Schedules, as such Schedules may be amended by the Debtor from time to time in accordance with Bankruptcy Rule 1009, as liquidated in amount and not disputed or contingent and for which no contrary proof of claim has been filed, (ii) any timely filed Claim as to which no objection to allowance has been interposed in accordance with Section 12.9 hereof or such other applicable period of limitation fixed by the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or as to which any objection has been determined by a Final Order to the extent such objection is determined in favor of the respective holder, (iii) any Claim tardily filed with leave of the Bankruptcy Court; or (iv) any Claim expressly allowed by a Final Order or hereunder.  Tort Claims are not Allowed Claims except as specifically provided in this Plan.

2.8     **"Award"** means the amount payable to a Tort Claimant as determined in accordance with the terms of this Plan.

2.9     **"Ballot"** means the ballot that is used by a Claimant to accept or reject the Plan, and pursuant to which Claimants will make certain elections regarding the treatment of their Claims as provided in the Plan, including releases of the Protected Parties as set forth in the Insurance Settlement Agreements and Plan.

2.10     **"Bankruptcy Code"** means Title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.*, and any amendments thereto applicable to this Case.

2.11     **"Bankruptcy Court"** means the United States Bankruptcy Court for the District of Montana, or such other court having jurisdiction over this Case or any proceeding within.

2.12     **"Bankruptcy Rules"** means the Rules and Forms of Practice and Procedures in Bankruptcy promulgated under 28 U.S.C. § 2075, as amended, and the local rules and general orders of the Bankruptcy Court, as applicable to Chapter 11 Case, together with all amendments and modifications thereto.

2.13     **"Business Day"** means any day other than Saturday, Sunday, or a "legal holiday," as that term is defined in Bankruptcy Rule 9006(a).

2.14     **"Case" or "Chapter 11 Case"** means the case under Chapter 11 of the Bankruptcy Code commenced by the Roman Catholic Bishop of Helena, Montana, a Montana Religious Corporation Sole, on January 31, 2014, Case No. 14-60074.

Plan of Reorganization

**2.15** **"Cash"** means cash, cash equivalents, bank deposits, and negotiable instruments payable on demand.

**2.16** **"Causes of Action"** means any and all Claims, whether arising prior to, on or after the Petition Date, of the Debtor's Estate, including to (1) rights of setoff, counterclaim or recoupment, and Claims on contracts or for breaches of duties imposed by law; (2) the right to object to Claims; (3) Claims pursuant to Section 362 of the Bankruptcy Code; (4) such Claims and defenses as fraud, negligence, breach of fiduciary duty, corporate waste, unlawful dividends, mistake, duress and usury; (5) all Claims under Sections including those arising under sections 544, 547, 548, 549, 550, and 553 of the Bankruptcy Code, the Uniform Fraudulent Transfer Act, the Uniform Fraudulent Conveyance Act, or any law of similar effect; (6) claims for tax refunds; and (7) any other Claims that may be asserted against third parties or insiders.

**2.17** **"Channeled Claim"** means any Tort Claim or any other Claim against any of the Protected Parties (or any Person insured by the Insurer Parties to the extent such Claim arises out of, relates to, or is in connection with the same injury or damages asserted as a Tort Claim against the Diocese Parties or Insurer Parties) that, directly or indirectly, arises out of, relates to, or is in connection with any Tort Claim, including any Related Insurance Claim. Notwithstanding the foregoing, nothing in this Section 2.17 shall be construed to include any Claim by the Province.

**2.18** **"Channeling Injunction"** means the injunction provided for the benefit of the Protected Parties under Section 12.6 of the Plan.

**2.19** **"Chapter 11 Professionals"** means, collectively, the Debtor's Professionals and, the Committee's Professionals.

**2.20** **"Claim"** means any past, present or future claim, demand, action, request, cause of action, suit, proceeding or liability of any kind or nature whatsoever, whether at law or equity, known or unknown, actual or alleged, asserted or unasserted, suspected or not suspected, anticipated or unanticipated, accrued or unaccrued, fixed or contingent, which has been or may be asserted by or on behalf of any Person, whether seeking damages (including compensatory, punitive, or exemplary damages) or equitable, mandatory, injunctive, or any other type of relief, including cross-claims, counterclaims, third-party claims, suits, lawsuits, administrative proceedings, notices of liability or potential liability, arbitrations, actions, rights, causes of action or orders, and any other claim within the definition of Section 101(5) of the Bankruptcy Code or "claim," as that term is defined in Section 101(5) of the Bankruptcy Code.

**2.21** **"Claimant"** means a holder of a Claim.

**2.22** **"Claims Bar Date"** means August 11, 2014, which was the last date for filing Claims against the Estate pursuant to the Bankruptcy Court's Order entered on May 6, 2014 [Docket No. 242].

**2.23** **"Claims Objection Bar Date"** means, unless extended by the Court, the first Business Day that follows the 60th day after the Effective Date, by which any objection to a

4

Claim (excluding Tort Claims) must be filed with the Bankruptcy Court or such objection will be forever barred.

**2.24** **"Closing"** means the payments and transfers to the Trust of those assets required to be paid and transferred in accordance with Section 10.5 of the Plan.

**2.25** **"Co-Defendant"** means a Person that is named as a defendant in a lawsuit in which the Debtor is also named as a defendant and/or who is alleged to be fully or partially responsible for a Claim asserted or that may be asserted in the future against both such Person and the Debtor, including co-Debtor as described in Section 509 of the Bankruptcy Code. None of the Protected Parties is a Co-Defendant.

**2.26** **"Committee"** means the Official Committee of Unsecured Claimants appointed by the United States Trustee in the Case, as such committee may be reconstituted from time to time.

**2.27** **"Committee's Professionals"** means Pachulski Stang Ziehl & Jones LLP; and all other professionals, if any, which the Committee has retained or may retain to provide professional services in accordance with Section 1103(a) of the Bankruptcy Code and as approved by the Bankruptcy Court.

**2.28** **"Confirmation Date"** means the date of the entry of the Confirmation Order.

**2.29** **"Confirmation Hearing"** means the hearing held by the Bankruptcy Court regarding confirmation of the Plan, as such may be continued from time to time.

**2.30** **"Confirmation Order"** means a Final Order confirming the Plan.

**2.31** **"Contingent"** means, with respect to a Claim, a Claim that has not accrued or is not otherwise payable and the accrual of which or the obligation to make payment on which is dependent upon a future event that may or may not occur.

**2.32** **"Contribution Claim"** means any Claim by any Insurer against any other Insurer of a seeking contribution, equitable contribution, indemnity, equitable indemnity, subrogation, equitable subrogation, "other insurance" clauses rights, or pursuant to any other theory under law or in equity, arising out of, relating to, or in connection with the defense or payment by such paying insurer of all or any part of any Claim (a) asserted against a Diocese Party; (b) arising out of, relating to, or in connection with the Policies; (c) arising out of, relating to, or in connection with the Coverage Litigation; or (d) channeled to or paid, in whole or in part, by the Trust.

**2.33** **"Coverage Litigation"** means the litigation entitled *William C. Whalen, et. al. v. Roman Catholic Bishop of Helena, et. al.* (and related crossclaims and third party claims), being Case No. BDV-2012-976 of the Montana First Judicial District Court for Lewis and Clark County, Montana.

**2.34** **"Claimant"** has the meaning ascribed to the term in Section 101(10) if the Bankruptcy Code.

5

Plan of Reorganization

**2.35**        **"Debtor"** means the Diocese.

**2.36**        **"Debtor's Professionals"** means Elsaesser Jarzabek Anderson Elliott & Macdonald, Chtd; Patterson Buchanan Fobes & Leitch, Inc., P.S.; Franz & Driscoll PLLP; Dickstein Shapiro LLP; Gough, Shanahan, Johnson & Waterman, PLLP; Anderson ZurMuehlen & Co, PC; and all other professionals, if any, which the Debtor has retained or may retain to provide professional services in accordance with sections 327(a) and 327(e) of the Bankruptcy Code.

**2.37**        **"Deposit and Loan Fund"** means the fund described in the "Diocese of Helena Deposit and Loan Fund Policy, effective May 25, 2011".

**2.38**        **"Diocese"** means the Roman Catholic Diocese of Helena, Montana, a Montana Religious Corporation Sole.

**2.40**        **"Diocese Parties"** means collectively the Reorganized Debtor, the Diocese and: (i) the Persons listed on Schedule 2.40 to this Plan; (ii) any and all named insureds, insureds and additional insureds under the Policies with respect to whom the Diocese has authority to release the Claims released pursuant to this Agreement, including those set forth in Schedule 2.40 to this Plan; (iii) each of the past, present and future parents, subsidiaries, affiliates, holding companies, merged companies, related companies, divisions and acquired companies of the Diocese and the Persons identified in Section 2.40(i) and (ii) above, each of their respective past, present, and future parents, subsidiaries, affiliates, holding companies, merged companies, related companies, divisions and acquired companies, and each of their respective predecessors, successors (except to the extent their liability is independent of any liability of the Diocese and the Persons identified in Section 2.40(i) and (ii) above) and assigns; and (iv) any and all past and present employees, officers, directors, shareholders, principals, teachers, staff, members, boards, administrators, priests, deacons, brothers, sisters, nuns, other clergy or religious, volunteers, agents, attorneys, and representatives of the Persons identified in Section 2.40(i) and (ii) and (iii) above, in their capacity as such.  Notwithstanding the foregoing, nothing in this Section 2.40 shall be construed to include the Province as one of the Diocese Parties.

**2.41**        **"Disallowed Claim"** means (i) a Claim, or any portion thereof, that has been disallowed by a Final Order; (ii) a Claim that has been listed in the Schedules at zero or as contingent, disputed, or unliquidated and as to which no proof of Claim has been timely filed or deemed timely filed with the Bankruptcy Court pursuant to the Bankruptcy Code, Final Order, or other applicable law; or (iii) a Claim that has not been listed in the Schedules and as to which no proof of Claim has been timely filed or deemed timely filed with the Bankruptcy Court pursuant to the Bankruptcy Code, Final Order, or other applicable law.

**2.42**        **"Disclosure Statement"** means the Disclosure Statement relating to this Plan, as it may be amended from time to time.

**2.43**        **"Disclosure Statement Order"** means the Order entered by the Bankruptcy Court approving the Disclosure Statement.

6

2.44      **"Disputed Claim"** means a Claim: (a) is listed as disputed in the Debtor's Schedules filed with the Bankruptcy Court; or (b) as to which a proof of Claim is filed or is deemed filed under Bankruptcy Rule 3003(b) (1) and as to which a timely objection has been filed and not been withdrawn or resolved by consensual agreement or  by a Final Order of the Court.

2.45      **"Distribution"** means any transfer of Cash or other property or instruments to either a Claimant by the Reorganized Debtor or the Trustee.

2.46      **"Entity"** has the meaning set forth in Section 101(15) of the Bankruptcy Code.

2.47      **"Effective Date"** means the first Business Day after the Confirmation Date on which all conditions to effectiveness specified in Section 11.1 of this Plan have been satisfied or waived.

2.48      **"Estate"** means the bankruptcy estate of the Debtor as created under Section 541 of the Bankruptcy Code.

2.49      **"Estimated Amount"** means the amount at which the Bankruptcy Court or the U.S. District Court for the District of Montana, pursuant to 28 U.S.C. §157(b)(2)(B), Section 502(c) of the Bankruptcy Code, and Bankruptcy Rule 3018(a), as the case may be, estimates any Claim or class of Claims that is Contingent, unliquidated, or disputed, including any Tort Claim or class thereof, for the purpose of (a) allowance, (b) distribution, (c) confirming this Plan pursuant to Section 1129 of the Bankruptcy Code, (d) voting to accept or reject this Plan pursuant to Section 1126 of the Bankruptcy Code, or (e) any other purpose.

2.50      **"Estimation Order"** means an order of the Bankruptcy Court or the U.S. District Court for the District of Montana, as applicable, that determines the Estimated Amount of any Claim or Claims for any purpose, whether individually or as part of an aggregate.

2.51      **"Exculpated Parties"** means the Debtor and the Committee and all of their respective present or former members, counsel for such members, managers, officers, directors, employees, representatives, attorneys, and agents acting in such capacity. "Exculpated Parties" shall not include the Holy See or a Perpetrator.

2.52      **"Extra-Contractual Claim"** means any Claim against any Settling Insurer seeking any type of relief, including compensatory, exemplary, or punitive damages, or attorneys' fees, interest, costs, or any other type of relief, on account of or based, in whole or in part, on allegations that any Settling Insurer acted in bad faith or in breach of any express or implied duty, obligation or covenant, contractual, statutory or otherwise, including any Claim on account of alleged bad faith; failure to act in good faith; violation of any express or implied duty of good faith and fair dealing; violation of any unfair claims practices act or similar statute, regulation, or code; any type of alleged misconduct; or any other act or omission of any Settling Insurer of any type for which the claimant seeks relief other than coverage or benefits under a policy of insurance. Extra-Contractual Claims include: (i) any Claim that arises out of, relates to, or is in connection with any Settling Insurer's handling of any Claim or any request for insurance coverage, including any request for coverage for any Claim, including any Tort Claim; (ii) any Claim that, directly or indirectly, arises out of, relates to, or is in connection with any of the

7

Policies and any contractual duties arising therefrom, including any contractual duty to defend any of the Diocese Parties against any Tort Claims; and (iii) the conduct of the parties with respect to the negotiation of any Insurance Settlement Agreement.

**2.53** **"Final Order"** means an order, judgment, or other decree (including any modification of amendment thereof) of the Bankruptcy Court, a U.S. District Court, or any other court having jurisdiction that remains in effect and has not been reversed, withdrawn, vacated, or stayed, and as to which the time to appeal or seek review, rehearing, or writ of certiorari has expired or, if such appeal or review has been taken, (i) it has been resolved and no longer remains pending or (ii) the Debtor, the Committee, Settling Insurers or the Trustee (after the Effective Date), as applicable, have mutually agreed in writing that the order from which such appeal or review is taken should be deemed to be a Final Order.

**2.54** **"Future Tort Claim"** means a Tort Claim based on Abuse that happened before the Petition Date for which no proof of claim is filed or deemed filed on or before the Claims Bar Date or for which a proof of claim is filed after the Claims Bar Date if the Person asserting the Tort Claim (a) is under eighteen years of age on the Claims Bar Date; (b) neither discovered nor reasonably should have discovered before the Claims Bar Date that his or her injury was caused by Abuse; or (c) has a Tort Claim that was barred by the applicable statute of limitations as of the Claims Bar Date but is no longer barred by the applicable statute of limitations for any reason, including for example the passage of legislation that revives such previously time-barred Tort Claims.

**2.55** **"Future Tort Claimant"** means the holder of a Future Tort Claim.

**2.56** **"Future Claim Representative"** means the Honorable Michael R. Hogan, U.S.D.J. (retired), who was appointed in the Reorganization Case as the legal representative of Persons holding Future Tort Claims by Order dated April 9, 2014 or any other Person appointed by the Bankruptcy Court or District Court, as applicable, as the future claims representative.

**2.57** **"General Unsecured Claim"** means any Claim against the Debtor that is not a Tort Claim, Administrative Claim, Priority Tax Claim or a Claim that is otherwise classified under the Plan.

**2.58** **"General Unsecured Convenience Claim"** means any General Unsecured Claim in an amount of $500 or less, or voluntarily reduced to $500 by the holder of such Claim.

**2.59** **"Insurance Settlement Agreements"** means, collectively or separately as the case may be, the agreements attached hereto as Exhibits B and C. Please note Exhibit C is in draft form.

**2.60** **"Insurer"** means (a) any Person that during any period of time either (i) provided insurance coverage to the Debtor and/or a Diocese Party, its predecessors, successors, or assigns, or (ii) issued or allegedly issued a binder, certificate, or policy of insurance to any of the Diocese Parties, its predecessors, successors, or assigns; and/or (b) any Person owing or allegedly owing a duty to defend and/or indemnify any of the Diocese Parties under any binder, certificate, or policy of insurance to any of the Diocese Parties.

8

Plan of Reorganization

**2.61**     **"Interest"** means all Claims, liens, encumbrances, interests, and other rights of any nature, whether at law or in equity, including any rights of contribution, indemnity, defense, subrogation, or similar relief.

**2.62**     **"Non-Settling Insurer"** means any Insurer that is not a Settling Insurer.

**2.63**     **"Penalty Claim"** means a Claim for a fine, penalty, forfeiture, multiple damages, punitive damages, or exemplary damages, including any Claim not meant to compensate the Claimant for actual pecuniary loss.

**2.64**     **"Perpetrator"** means any individual who personally committed an act of Abuse causing a Tort Claim.

**2.65**     **"Person"** means an individual or Entity, including any corporation, corporation sole, partnership, association, limited liability company, proprietorship, joint venture, trust, executor, legal representative, or any other entity or organization, as well as any federal, international, foreign, state, or local governmental or quasi-governmental entity, body, or political subdivision or any agency or instrumentality thereof and any other person within the definition of Section 101(41) of the Bankruptcy Code or "person," as that term is defined in Section 101(41) of the Bankruptcy Code.

**2.66**     **"Petition Date"** means January 31, 2014, the date the Debtor filed its voluntary petition commencing this Case.

**2.67**     **"Placid Enterprises, LLC Loan"** means the loan between Placid Enterprises, LLC and the Debtor evidenced by Schedule 2.67.   For purposes of showing Debtor's ability to repay such loan, and for general future financial operations, Debtor's Pro-Forma financial statements are set forth as Exhibit D.

**2.68**     **"Plan"** means this Plan of Reorganization (and all exhibits annexed thereto), Plan Documents and any and all modifications and/or amendments thereto.

**2.69**     **"Plan Documents"** means the Insurance Settlement Agreements and all other agreements, documents and exhibits, as the same may be amended, modified, supplemented, or restated from time to time, that are necessary or appropriate to implement the Plan and the Trust, including the Trust Documents, provided that the Committee shall have approved each of said agreements, documents and exhibits as to form and content, such approval not to be unreasonably withheld.

**2.70**     **"Policies"** means any and all known and unknown binders, certificates, or policies of insurance issued or allegedly issued by any of the Settling Insurers to any of the Diocese Parties, except any claims-made certificates or policies of insurance issued or allegedly issued by Catholic Mutual to the Diocese Parties for a policy period July 1, 2014 through July 1, 2015 and the two immediately prior policy periods, *i.e.*, July 1, 2012 through July 1, 2013, and July 1, 2013 through July 1, 2014.

9

**2.71** **"Post-Confirmation Notice Parties"** means the Reorganized Debtor, the Trust, the Office of the U.S. Trustee and any Person that files a request to be a Post-Confirmation Notice Party.

**2.72** **"Priority Claim"** means any Claim which, if Allowed, would be entitled to priority under Section 507 of the Bankruptcy Code.

**2.73** **"Priority Claimant"** means the holder of a Priority Claim.

**2.74** **"Professional"** means any Person employed by the Debtor or the Committee pursuant to Sections 327 or 1103 of the Bankruptcy Code.

**2.75** **"Professional Fee Claim"** means a Claim under Bankruptcy Code Sections 326, 327, 328, 330, 331, 503(b), 1103, or 1104 for compensation for services rendered or expenses incurred by any of the Professionals prior to the Effective Date.

**2.76** **"Pro Rata"** means proportionate, and when applied to a Claim means the ratio of the amount distributed on account of an Allowed Claim in a Class to the amount distributed on account of all Allowed Claims in such class.

**2.77** **"Proponents"** means the Debtor and the Committee.

**2.78** **"Protected Parties"** means the Diocese Parties and the Settling Insurers.

**2.79** **"Province"** means Ursuline Sisters of the Western Province (a/k/a Ursuline Western Province), Ursuline Convent of the Holy Family, and Ursuline Convent of Our Lady or Santa Rosa Ursuline Corporation.

**2.80** **"Qualified Counsel"** means those attorneys representing Tort Claimants who have entered into a written retainer or fee agreements with such Claimant(s) on or before the Effective Date; provided that such attorney agrees that the attorney's receipt of Qualified Counsel Fees is credited against the fees owed by such Tort Claimant(s).

**2.81** **"Qualified Counsel Fees"** means the total fees payable to Qualified Counsel by the beneficiaries of a Trust subaccount based on the reserves or distributions calculated under the Allocation Plan in accordance with written retainer or fee agreements with those beneficiaries.

**2.82** **"Qualified Counsel Costs"** means the amount equal to the unpaid reimbursable expenses (prepetition and postpetition through the Effective Date) payable to Qualified Counsel by the beneficiaries of a Trust subaccount in accordance with written retainer or fee agreement with those beneficiaries and who are utilizing the Allocation Plan.

**2.83** **"Related Insurance Claim"** means (i) any Claim against any Settling Insurer for defense, indemnity, reimbursement, contribution, subrogation, or similar relief that, directly or indirectly, arises out of, relates to, or is in connection with a Tort Claim; (ii) any Extra Contractual Claim that, directly or indirectly, arises out of, relates to, or is in connection with any Tort Claim, including any Claim that, directly or indirectly, arises out of, relates to, or is in

10

connection with any of the Insurer Parties' handling of any Tort Claim; and (iii) any Contribution Claim.

**2.84** **"Reorganized Debtor"** means the Debtor on and after the Effective Date; provided that any successor to the Diocese, Debtor or the Reorganized Debtor through a merger or suppression of the Diocese shall not have any rights or remedies by virtue of the Plan or Confirmation Order on account of Tort Claims for which the successor was independently liable.

**2.85** **"Representatives"** means the current and former officers, directors, agents, attorneys, employees, financial advisors and legal representatives of a Person, but excluding any Perpetrator.

**2.86** **"Revested Assets"** means all assets and or property, real or personal, owned by the Debtor which are not transferred to the Trust.

**2.87** **"S/A/P Claims"** means, collectively, Secured Claims, Administrative Claims (including Professional Fee Claims), Priority Claims, and Priority Tax Claims.

**2.88** **"S/A/P Claims Reserve"** means the reserve to be established by the Reorganized Debtor for Administrative Claims (including Professional Fee Claims), Priority Claims, and Priority Tax Claims.

**2.89** **"Schedules"** means the Schedules of Assets and Liabilities and Statement of Financial Affairs of each of the Debtor filed pursuant to Section 521 of the Bankruptcy Code, the Official Bankruptcy Forms and the Bankruptcy Rules, including any supplements or amendments thereto through the Confirmation Date.

**2.90** **"Section 363 Sale"** means a sale of property pursuant to the provisions of Section 363 of the Bankruptcy Code.

**2.91** **"Settled"** means, with respect to a Claim, a Claim that has been resolved by agreement, and if required, approved by Final Order of the Bankruptcy Court or a U.S. District Court, as applicable.

**2.92** **"Settling Insurer"** means American Home Assurance Company ("American Home"); Catholic Mutual Relief Society of America ("Catholic Mutual"); Fireman's Fund Insurance Company and Fireman's Fund Indemnity Company ("Fireman's Fund"); Montana Insurance Guaranty Association, as the limited statutory successor in interest to Reliance Insurance Company, in liquidation under and subject to all limitations and restrictions imposed by the Montana Insurance Guaranty Act, MCA §33-10-101. *et seq.* ("MIGA"); OneBeacon Insurance Company, Resolute Management, Incorporated, Commercial Union Insurance Companies, and American Employers' Insurance Company ("OneBeacon"); Travelers Casualty and Surety Company (formerly known as Aetna Casualty and Surety Company), United States Fidelity and Guaranty Company, Standard Fire Insurance Company, St. Paul Mercury Insurance Company, and St. Paul Fire and Marine Insurance Company ("Travelers"); Great American Insurance Company and Great American Agents ("Great American"); and, each of their past, present and future parents, subsidiaries, affiliates, and divisions, each of their respective past, present, present and future parents, subsidiaries, affiliates, holding companies, merged

11

companies, related companies, divisions and acquired companies, each of their respective past, present and future directors, officers, shareholders, employees, subrogees, partners, principals, agents, attorneys, joint ventures, joint venturers, representatives, and claims handling administrators, and each of their respective predecessors, successors, assignors, and assigns, whether known or unknown, and all Persons acting on behalf of, by, through or in concert with them.

2.93    **"Supplemental Injunction"** means the injunction provided for the benefit of the Settling Insurers under Section 12.7 of the Plan.

2.94    **"Temporarily Allowed"** with reference to a Claim means such Claim as temporarily allowed for any purpose other than distribution on a Claim pursuant to Bankruptcy Rule 3018(a) or otherwise.

2.95    **"Tort Claim"** "Tort Claim" means any (a) Claim against any of the Diocese Parties arising out of, relating to, or in connection with, in whole or in part, directly or indirectly, any Abuse or any other misconduct, and seeking monetary damages or any other relief, under any theory of liability, including vicarious liability, any negligence-based theory, contribution, indemnity, or any other theory based on any acts or failures to act by the Diocese Parties or any other Person who any of the Diocese Parties are allegedly responsible for, including any such Claim asserted against any of the Diocese Parties in connection with the Reorganization Case, and any Claim of any Person whose Interests are, have been, or may be represented by the Future Claim Representative.  Notwithstanding the foregoing, nothing in this Section 2.95 shall be construed to include any Claim against the Province.

2.96    **"Tort Claimant"** means the holder of a Tort Claim, the estate of a deceased Tort Claimant, or the personal executor or personal representative of the estate of a deceased Tort Claimant, as the case may be.

2.97     **"Trust"** means the trust to be established pursuant to the Plan and the Trust Agreement.

2.98    **"Trust Agreement"** means the agreement attached as Exhibit E to the Plan.

2.99    **"Trust Assets"** means all real and personal property funded to the Trust.

2.100   **"Trust Documents"** means the Trust Agreement, instruments, and other documents that are reasonably necessary or desirable in order to implement the provisions of the Plan that relate to the creation, administration and funding of the Trust.

2.101   **"Trustee"** means Omni Management Group, LLC, the trustee of the Trust, and any successor trustee appointed pursuant to the terms of this Plan and the Trust Agreement.

2.102   **"U.S. District Court"** means a United States District Court.

2.103   **"Unclaimed Property"** means any Cash or other property which is unclaimed for one hundred and eighty (180) days after the Distribution.

12

**2.104** **"U.S. Trustee"** means the Office of the United States Trustee for Region 18.

**2.105** **"Unresolved"** means, with respect to a Claim, a Claim that has neither been Allowed or Disallowed nor liquidated.

**SECTION III**
**PLAN OBJECTIVES**

**3.1** **Objectives**

The Plan provides the means for settling and paying all Claims asserted against the Debtor. The Plan provides for the creation of a Trust and channeling of all Channeled Claims to the Trust for allowance and distribution to Tort Claimants. The Trust's assets will consist of Cash from the Debtor, and contributions by Settling Insurers. Trust assets will be used to fund certain of the Trust's costs and expenses and payments to Tort Claimants. Distributions and reserves from the Trust to Tort Claimants will be determined by application of the Allocation Plan and, where applicable, the Trustee's business judgment. Annuity Fund Claimants and Annuitants are unimpaired. The Deposit and Loan Fund's assets and liabilities will be administered consistently with Canon Law. The entities making up the Deposit and Loan Fund are not true creditors of the Diocese, as they are part of the Diocese. Accordingly, the Deposit and Loan Fund Claimants will not be separately treated or classified in the Plan. The Endowment Fund and the Guatemala Fund shall continue to serve their charitable purposes. Allowed General Unsecured Claimants will receive their Pro Rata share of $1,294,635.03, based on known amounts. This figure may change after the conclusion of the claims objection process, depending on the allowance or disallowance of certain claims. The Debtor will receive the benefit of a Section 1141(d) discharge. Settling Insurers will receive the benefit of injunctions provided under the Plan and their particular Insurance Settlement Agreement. Nothing in this Plan is intended to replace and does not affect, diminish or impair the liabilities of any Co-Defendant under applicable non-bankruptcy law, including any laws governing joint and several liabilities.

**SECTION IV**
**TREATMENT OF UNCLASSIFIED CLAIMS**

**4.1** **Administrative Claims**

Each holder of an Allowed Administrative Claim against the Debtor shall receive, in full satisfaction, settlement, release and extinguishment of such Claim, Cash equal to the Allowed amount of such Administrative Claim, either (a) on or as soon as practicable following the Effective Date, or, if later, the Allowance Date; or (b) upon such terms as may be agreed to in writing by the Holder of an Administrative Claim. Provided, however, that any Administrative Claim incurred postpetition by the Debtor in the ordinary course of its operations or arising pursuant to one or more postpetition agreements or transactions entered into by the Debtor with Bankruptcy Court approval, shall be paid or performed in accordance with the terms and conditions of the particular transaction(s) and any agreement(s) relating thereto, or as otherwise agreed by the Debtor (if before the Effective Date) or the Reorganized Debtor (on and after the Effective Date), on the one hand, and the holder of such Administrative Claim, on the other.

13

Debtor has entered into an agreement with Catholic Mutual wherein Catholic Mutual shall contribute $450,000.00 towards the administrative expenses of Debtor. Such contribution of $450,000.00 shall assist in defraying the estimated $750,000.00 of professional fees, and such contribution shall be paid on or before the Effective Date.

### 4.2    Professional Claims

#### 4.2.1    Bar Dates for Professional Claims

All Professionals or other Persons requesting compensation or reimbursement of expenses pursuant to any of §§ 327, 328, 330, 331, 503(b) and 1103 of the Bankruptcy Code for services rendered on or before the Effective Date (including, among other things, any compensation requested by any Professional or any other Person for making a substantial contribution in the Chapter 11 Case) shall file and serve on the Post-Confirmation Notice Parties an application for final allowance of compensation and reimbursement of expenses accruing from the Petition Date to the Effective Date, no later than (A) forty-five (45) days after a notice of the Effective Date is filed with the Bankruptcy Court and served on such Professional or other Persons, or (B) such later date as the Bankruptcy Court shall order upon application made prior to the end of such 45-day period (the "**Professional Claims Bar Date**")

#### 4.2.2    Objections to Professional Claims

Objections to Professional Claims or Claims of other Persons for compensation or reimbursement of expenses must be filed and served on the Post-Confirmation Notice Parties and the Professionals or other Persons to whose application the objections are addressed on or before (A) forty-five (45) days after the Professional Claims Bar Date or (B) such later date as (i) the Bankruptcy Court shall order upon application made prior to the end of such 45-day period or (ii) is agreed between the Debtor (if before the Effective Date) or the Reorganized Debtor (on and after the Effective Date), as applicable, and the affected Professional or other Person.

4.2.3    Notwithstanding anything contained in Section 4.2, the allowance of a Professional Claim shall not affect, impair, diminish or be an adjudication of any claim that is excepted from the exculpation contained in Section 12.5.

### 4.3    U.S. Trustee Fees

All fees due and payable pursuant to 28 U.S.C. § 1930 and not paid prior to the Effective Date shall be paid in Cash as soon as practicable after the Effective Date. After the Effective Date, the Reorganized Debtor shall pay quarterly fees to the U.S. Trustee, in Cash, until the Case is closed, and a Final Decree is entered. In addition, the Reorganized Debtor shall file post-Confirmation Date reports in conformance with the U.S. Trustee guidelines. The U.S. Trustee shall not be required to file a request for payment of its quarterly fees, which will be deemed Administrative Claims against the Debtor and Debtor's Estate.

### 4.4    Priority Tax Claims

With respect to each Allowed Priority Tax Claim not paid prior to the Effective Date, the Reorganized Debtor shall (i) pay such Claim in Cash as soon as practicable after the Effective

Plan of Reorganization

Date, or (ii) provide such other treatment agreed to by the holder of such Allowed Priority Tax Claim and the Debtor (if before the Effective Date) or the Reorganized Debtor (on and after the Effective Date), as applicable, in writing, provided such treatment is no less favorable to the Debtor or the Reorganized Debtor than the treatment set forth in clause (i) of this sentence.

## SECTION V
## CLASSIFICATION OF CLAIMS

**5.1** All Claims except Administrative Claims and Priority Tax Claims are placed in the following classes for all purposes including voting, confirmation of the Plan and distribution pursuant to the Plan. A Claim is classified in a particular class only to the extent the Claim qualifies within the description of that class and is classified in a different class to the extent the Claim qualifies within the description of that different class. If a Claim is acquired or transferred, the Claim will be placed in the class where it would have been placed if it were owned by the original holder of such Claim. If a Claimant has more than one Claim in the same class, such Claims will be aggregated and treated as a single Claim. If a Claimant has Claims in different classes, such Claims will be aggregated only within the same class and not between classes.

5.1.1 Class 1 consists of Other Priority Claims. These are claims entitled to priority under Section 507(a)(3) – (a)(7) and 507(a)(9) – (a)(10). These are claims for unpaid wages, employee benefits Plan contributions and the like.

5.1.2 Class 2 consists of Holders of Secured Claims. Based upon the Debtor's Schedules and the Proof of Claims filed in this Chapter 11 Case, the Debtor believes there are only three (3) Holders of Secured Claims. First Interstate Bank filed a proof of claim based upon a loan in the amount of $2,940,980.54, which is secured by real property. The Debtor believes that the current amount due to First Interstate Bank is approximately $2,890,489.14. Ravalli Bank filed a proof of claim based upon a loan in the amount of $926,992.72, which is secured by real property, and for which Debtor believes the current balance due is $868,715.20. The Foundation for the Diocese of Helena has a Claim based upon a loan in the current amount of $813,714.63, which is secured by real property. All Secured Claims are fully secured by property that the Debtor contends is held for the benefit of the Good Samaritan Ministries, Holy Rosary Parish and St. Francis of Assisi Parish, valued at $2,528,300, $3,179,657 and $3,579,015 respectively.

Class 5.1.3 Class 3 consists of the Holders of General Unsecured Convenience Claims against the Debtor or Holders of Unsecured Claims who elect to be treated as a General Unsecured Convenience Claim. These Claims are unsecured creditors of Claims of $500.00 or less or who voluntarily reduce their Unsecured Claim to $500.00. Class 3 Claims total $2,706.38.

5.1.4 Class 4 consists of Holders of Tort Claims.

5.1.5 Class 5 consists of Holders of Future Tort Claims.

5.1.6 Class 6 consists of Holders of General Unsecured Claims that are not Class 3 General Unsecured Convenience Claims. These are Claims not secured by any interest

15

Plan of Reorganization

in the Debtor's property and consist of any Claim against the Debtor that is not a Tort Claim, Future Tort Claim, Annuity Claim, Deposit and Loan Fund Claim, Administrative Claim, Abuse Related Contingent Claim, Penalty Claim, Priority Tax Claim, Evenson Claim or Secured Claim. Based upon a review of the Debtor's Schedules, as well as filed Proofs of Claim, the Debtor estimates that Class 6 Unsecured Claims total approximately $1,294,635.03, however it is anticipated that the claim objection process, more particularly, as to the Montana DEQ claim, will result in a reduction of this amount to $850,000.00 range. In addition, it is anticipated that certain Parishes will contribute to payment of certain claims as appropriate reducing Debtor's ultimate monetary responsibility for these claims. The Holders of Class 6 General Unsecured Claims are as follows:

> Mountain West Bank - $684,816.42
> Montana Pro Audio - $8,059.25
> Flint Creek Catholic Community - $611.00
> Jerry and Jan Cashman - $100,000.00
> Reverend Frank McCormick - $518.96
> Reverend Richard Sodja - $629.40
> Montana DEQ - $500,000.00

5.1.7 These Claims are Claims based upon a fine, penalty, forfeiture, punitive damages, or the like not meant to compensate the Claimant for actual pecuniary loss. The Debtor is unaware of any such Penalty Claims. It is possible that Class 4 Tort Claimants may have included some type of Penalty Claim in their proofs of claim.

5.1.8 Class 8 consists of Holders of Claims against the Annuity Fund who are the current or future Annuitants receiving payments from such fund. These Claims are backed by Annuity Fund investments of $1,260,519.00, which will be used to fund an estimated liability of $771,000.00.

5.1.9 Class 9 consists of Abuse Related Contingent Claims. These are Claims by an Person against the Debtor for contribution, indemnity, or reimbursement arising as a result of such Person's liability for paying or defending against any Tort Claim, including, but not limited to, a joint tortfeasor or the like. The Ursuline Sisters of the Western Province filed an unliquidated and contingent Claim asserting contribution and indemnification Claims based upon being named as Co-Defendant with the Debtor in various Tort Litigations, and are a Class 9 Claim.

5.1.10 Class 10 consists of the claim of Shaela Evenson for wrongful termination. The Shaela Evenson Claim will be allowed to the extent determined in the litigation at Evenson v. Butte Central Catholic Schools, Case No. CV 14-55-BU-BWM-JCL, U.S. District Court for the District of Montana, Butte Division, subject to the limits of the policy of insurance that may be liable for such claim.

| CLASS | DESCRIPTION | IMPAIRMENT | VOTING |
|-------|-------------|------------|--------|
| 1 | Other Priority Claims | Unimpaired | Deemed to Accept |
| 2 | Secured Claims | Unimpaired | Deemed to Accept |
| 3 | General Unsecured Convenience Claims | Unimpaired | Deemed to Accept |
| 4 | Tort Claims (Other than Future Tort Claims) | Impaired | Yes |
| 5 | Future Tort Claims | Impaired | Yes |
| 6 | General Unsecured Claims | Impaired | Yes |
| 7 | Penalty Claims | Impaired | Deemed to Reject |
| 8 | Annuity Claims | Unimpaired | Deemed to Accept |
| 9 | Abuse Related Contingent Claims | Impaired | Deemed to Reject |
| 10 | Shaela Evenson Claim | Impaired | Yes |

     **5.2**       Except as provided in this Plan, the treatment in this Plan is in full and complete satisfaction of all of the legal, contractual, and equitable rights that each holder of a Claim may have against the Debtor or its property. This treatment supersedes and replaces any agreements or rights those holders have in or against the Debtor or its property. All Distributions under the Plan will be tendered to the entity holding the Claim. **EXCEPT AS SET FORTH IN THIS PLAN, NO DISTRIBUTIONS WILL BE MADE FROM AND NO RIGHTS WILL BE RETAINED AGAINST THE DEBTOR OR ITS PROPERTY ON ACCOUNT OF ANY CLAIM THAT IS NOT AN ALLOWED CLAIM.**

**SECTION VI**
**TREATMENT OF UNIMPAIRED CLASSES OF CLAIMS**

     **6.1**    **Class 1: Other Priority Claims**

     The holders of Allowed Other Priority Claims, if any are determined to exist, will receive either (a) payment from the Reorganized Debtor of the full amount of their Allowed Claims in Cash, without interest on or as soon as practicable following the Effective Date or, if later, the Allowance Date; or (b) payment of their Allowed Claims upon such terms as may be agreed in writing by the Claimant and the Reorganized Debtor.

17

Plan of Reorganization

### 6.2     Class 2: Secured Claims

#### 6.2.1   Impairment and Voting

Class 2 is unimpaired under the Plan.  Holders of Secured Claims are deemed to have accepted the Plan under Section 1126(f) of the Bankruptcy Code and are not entitled to vote on the Plan.  For purposes of distributions under the Plan, each holder of a Secured Claim in Class 2 is considered to be in its own separate subclass within Class 2 (*i.e.*, Class 2-1, Class 2-2, *etc.*), and each such subclass is deemed to be a separate Class for purposes of the Plan.

#### 6.2.2   Alternative Treatment

On or as soon as practicable following the Effective Date, the Reorganized Debtor shall select, in its discretion, one of the following alternative treatments for each Allowed Secured Claim in Class 2, which treatment shall be in full and final satisfaction, settlement and release of, and in exchange for, such Allowed Secured Claim:

> 6.2.2.1     Abandonment or Surrender. The Reorganized Debtor shall abandon or surrender to the holder of such Claim the property securing such Claim, in full satisfaction and release of such Claim.

> 6.2.2.2     Cash Payment.  The Reorganized Debtor shall pay to the holder of such Claim Cash equal to the Allowed amount of such Claim upon the sale of the collateral, or such lesser amount to which the holder of such Claim and the Reorganized Debtor shall agree, in full satisfaction and release of such Claim.

> 6.2.2.3     Unimpairment.  The Reorganized Debtor may leave the rights of the holder of such Claim unimpaired or provide for such other treatment as necessary to otherwise satisfy the requirements of the Bankruptcy Code.

#### 6.2.3   Unsecured Deficiency Claim

Any unsecured deficiency Claim asserted by a holder of an Allowed Secured Claim in Class 2 shall be filed with the Bankruptcy Court within thirty (30) days following the date of the abandonment or surrender of such Claimant's collateral or such Claimant's receipt of its distribution under the Plan.  Any Allowed unsecured deficiency Claim shall be treated in accordance with Section 7.3 of the Plan.  As of the date of this Plan no Unsecured Deficiency Claims exist.

### 6.3     Class 3: General Unsecured Convenience Claims

Each holder of Allowed General Unsecured Convenience Claims will receive either (a) payment from the Reorganized Debtor of the full amount of its Allowed General Unsecured Convenience Claim in Cash, on or as soon as reasonably practicable following the Effective Date or, if later, the Allowance Date; or (b) payment of its Allowed General Unsecured Convenience Claim upon such terms as may be agreed in writing by the Claimant and the Reorganized Debtor.

18

### 6.4    Class 8: Annuity Claims

Class 8 is unimpaired under the Plan.  Holders of Annuity Claims are deemed to have accepted the Plan under Section 1126(f) of the Bankruptcy Code and are not entitled to vote on the Plan.

### SECTION VII
### TREATMENT OF IMPAIRED CLASSES OF CLAIMS

### 7.1    Class 4:  Tort Claims (Other than Future Tort Claims)

7.1.1    On the Effective Date, the Trust shall assume all liability for and the Trust will pay all Tort Claims (Other than Future Tort Claims) ("Class 4 Claims") pursuant to the provisions of the Plan and Trust Documents.  Tort Claimants shall have their Class 4 Claims treated pursuant to the Allocation Plan, including review of such Claims by the Abuse Claim Reviewer in accordance with the Allocation Plan.

7.1.2    Nothing in this Plan is intended to affect, diminish or impair any Tort Claimant's rights against any Co-Defendant, including that Co-Defendant's joint and several liability for abuse, if any.

7.1.3    Debtor, the Reorganized Debtor and their counsel shall reasonably cooperate with the Abuse Claims Reviewer and the Trustee as requested by the Abuse Claims Reviewer or the Trustee in connection with any inquiries by either in the administration of the Allocation Plan.

7.1.4    No Tort Claimant may challenge the merit, validity, or amount of any Class 4 Claim.  Any objection to a Class 4 Claim pending as of the Effective Date is deemed withdrawn with prejudice.  The Trustee shall have the sole and exclusive right to object to a Class 4 Claim.  The Reorganized Debtor shall not have the right to object to a Class 4 Claim.

7.1.5    The Trust shall pay Class 4 Claims in accordance with the terms of the Plan, Confirmation Order and Trust Documents.

7.1.6    The Distributions from the Trust are in full settlement of the amounts agreed to be paid by the Diocese.  The Committee does not anticipate that the Trust will have sufficient assets to pay all of the Tort Claims in the full amount that all Tort Claimants may be owed in the event that all Tort Claimants liquidated their Claims pursuant to applicable non-bankruptcy law.  For the avoidance of doubt, neither the Debtor's or any Co-defendants' obligations to Tort Claimants shall be deemed to have been paid in full, nor their liability to Tort Claimants fully satisfied, as a result of reserves for, distributions on account of or payments received by Tort Claimants from the Trust.

7.1.7    If a Tort Claim is denied payment pursuant to the Allocation Plan, the holder of such Tort Claim will have no further rights against the Debtor, Reorganized Debtor, the Trust, Trustee, or Protected Parties arising out of, relating to, or in connection with such Tort Claim.

7.1.8    Before any distribution(s) to Tort Claimants, the Trustee will subtract all Qualified Counsel Fees from the balance in a Trust subaccount in an amount equal to the total fees payable to Qualified Counsel by the beneficiaries of that Trust subaccount based on the reserves or distributions calculated under the Allocation Plan.  The Trust shall pay such fees to Qualified Counsel as and when the Tort Claimant receives a distribution from the Trust.

7.1.9    Before any distribution(s) to Tort Claimants from a Trust subaccount the Trustee will subtract all Qualified Counsel Costs from the balance in a Trust subaccount in an amount equal to the unpaid reimbursable expenses (prepetition and postpetition through the Effective Date) payable to Qualified Counsel by the beneficiaries of that Trust subaccount.

7.1.10  Subject to the treatment of Qualified Counsel Fees and Qualified Counsel Costs pursuant to the Plan, the fees and expenses of attorneys representing Tort Claimants who receive payment from the Trust will be borne by such Tort Claimants based on applicable state law and individual arrangements made between such Tort Claimants and their respective attorneys. The Protected Parties will not have any liability for any fees and expenses of attorneys representing any of the Tort Claimants.  The Trust and the Trustee will not have any liability for any fees and expenses of attorneys representing any of the Tort Claimants, except to the extent that the Trust or the Trustee is required to make payments pursuant to the provisions herein relating to Qualified Counsel Fees and Qualified Counsel Costs.

7.1.11  Penalty Claims relating to Tort Claims will receive no distribution under the Plan.

7.1.12  A Tort Claimant may withdraw a Tort Claim at any time on written notice to the Trustee.  If withdrawn, (a) the Tort Claim will be withdrawn with prejudice and may not be reasserted, (b) as a condition to withdrawal of the Tort Claim, any funds paid to the Tort Claimant by the Trust (inclusive of attorneys' fees and costs) shall be returned to the Trust, and (c) any reserve maintained by the Trust on account of such Claim shall revert to the non-reserved assets of the Trust for distribution in accordance with the Plan.

7.1.13  Each Tort Claimant participating in the Allocation Plan thereby consents to the use of $450,000.00 paid by Catholic Mutual to the Diocese for the payment of Allowed administrative expenses.

## 7.2    Class 5: Future Tort Claims

7.2.1    On the Effective Date, the Trust shall assume all liability for and the Trust will pay all Future Tort Claims pursuant to the provisions of the Plan and Trust Documents.

7.2.2    Future Tort Claimants shall have their Claims treated pursuant to the Allocation Plan, including review of such Claims by the Abuse Claim Reviewer in accordance with the Allocation Plan.

7.2.3   Nothing in this Plan is intended to affect, diminish or impair any Future Tort Claimant's rights against any Co-Defendant.

7.2.4   Debtor, the Reorganized Debtor and their counsel shall reasonably cooperate with the Abuse Claims Reviewer and the Trustee as requested by the Abuse Claims Reviewer or the Trustee in connection with any inquiries by either in the administration of the Allocation Plan.

7.2.5   No Future Tort Claimant may challenge the merit, validity, or amount of any Tort Claim or Future Tort Claim.  The Trustee shall have the sole and exclusive right to object to a Future Tort Claim.  The Reorganized Debtor shall not have the right to object to a Future Tort Claim.

7.2.6   The Trust shall pay Future Tort Claims in accordance with the terms of the Plan, Confirmation Order and Trust Documents.

7.2.7   The Distributions from the Trust with respect to Future Tort Claims shall be without prejudice to any Future Tort Claimant's right to assert in any other proceeding that he or she has not been fully compensated for his or her injuries relating to his or her Future Tort Claim.

7.2.8   If a Future Tort Claim is denied payment pursuant to the Allocation Plan, the holder of such Future Tort Claim will have no further rights against the Debtor, Reorganized Debtor, the Trust, Trustee, or Protected Parties arising out of, relating to, or in connection with such Future Tort Claim.

7.2.9   The fees and expenses of attorneys representing Future Tort Claimants who receive payment from the Trust will be borne by such Future Tort Claimants based on applicable state law and individual arrangements made between such Future Tort Claimants and their respective attorneys. The Protected Parties, the Trust, and the Trustee will not have any liability for any fees and expenses of attorneys representing any of the Future Tort Claimants and any Claims for such fees and expenses will be Disallowed.

7.2.10   Penalty Claims relating to Future Tort Claims will receive no distribution under the Plan.

7.2.11   A Future Tort Claimant may withdraw a Future Tort Claim at any time on written notice to the Trustee.  If withdrawn, (a) the Future Tort Claim will be withdrawn with prejudice and may not be reasserted, (b) as a condition to withdrawal of the Future Tort Claim, any funds paid to the Future Tort Claimant by the Trust (inclusive of attorneys' fees and costs) shall be returned to the Trust, and (c) any reserve maintained by the Trust on account of such Claim shall revert to the non-reserved assets of the Trust for distribution in accordance with the Plan.

## 7.3      Class 6: General Unsecured Claims

The holders of Allowed General Unsecured Claims will receive payment from the Reorganized Debtor of their Pro Rata share of the sum of $1,294,635.03, to be paid as soon as

Plan of Reorganization

reasonably practicable after all General Unsecured Claims have either been Allowed or Disallowed, but subject to the filing and allowance of Claims under Section 502(h) of the Bankruptcy Code.

### 7.4 Class 7: Penalty Claims

Allowed Penalty Claims, if any, will be subordinated to all other Allowed Claims and will receive no distribution under the Plan.

### 7.5 Class 9: Abuse Related Contingent Claims

In accordance with Section 502(e) (1) of the Bankruptcy Code, each Abuse Related Contingent Claim held by any Person against the Debtor shall be disallowed and will receive no distribution under the Plan.

### 7.6. Class 10: Shaela Evenson Claim

The Plan provides that the Holder of the Class 10 Claim shall be allowed to the extent determined in litigation in Evenson v. Butte Central Catholic Schools, Case No. CV14-55-BU-BWM-JCL, U.S. District Court, District of Montana. The claim shall be paid only through applicable insurance coverage. Claimant shall receive no other distribution from the Debtor under the Plan.

## SECTION VIII
## ACCEPTANCE OR REJECTION OF PLAN

### 8.1 Classes Entitled to Vote

Each holder of a Claim in Classes 4, 5, 6 and 10 are impaired and entitled to vote separately to accept or reject the Plan.

#### 8.1.1 Presumed Acceptance of the Plan

Classes 1, 2, 3 and 8 are unimpaired under the Plan and are, therefore, conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.

#### 8.1.2 Presumed Rejection of this Plan

Classes 7 and 9 are impaired and shall receive no Distribution under the Plan and are, therefore, deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.

### 8.2 "Cram Down" Request

Section 1129(a)(10) of the Bankruptcy Code shall be satisfied if an impaired Class of holders of Claims, accepts the Plan by a vote of at least two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of the Allowed Claims of such Class that have voted to accept or reject the Plan. The Debtor requests confirmation of this Plan under section 1129(b) of the Bankruptcy Code with respect to any impaired Class that does not accept this Plan pursuant

Plan of Reorganization

to section 1126(c) of the Bankruptcy Code. The Debtor reserves the right to modify this Plan to the extent that confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification.

**SECTION IX**
**TRUST**

### 9.1       Establishment of Trust

On the Confirmation Date, the Trust shall be established in accordance with the Trust Documents. The Trust shall qualify as a Qualified Settlement Fund pursuant to Section 468B of the Internal Revenue Code and the Treasury Regulations promulgated thereunder.  The Trust Documents, including the Trust Agreement, are incorporated herein by reference.

### 9.2       Trust Funding

The Trust will be funded as follows:

9.2.1   Within ten (10) days after the Conditions to Effectiveness set forth in Section 11.1 (a), (b), and (c) have occurred, the Reorganized Debtor will pay to the Trust the sum of $2,000,000.00.

9.2.2   Within ten (10) days after the Settling Insurers received written notice from the Trustee that the Conditions to Effectiveness set forth in Section 11.1 (a), (b), and (c) have occurred, the Settling Insurers will make payments to the Trust as follows:

> American Home:  Four Hundred Eighty Seven Thousand Five Hundred Dollars ($487,500);

> Catholic Mutual: Three Million Eight Hundred Thousand Dollars ($3,800,000);

> Fireman's Fund:  Four Million Dollars ($4,000,000);

> Great American Insurance:   Three Million Five Hundred Thousand Dollars ($3,500,000);

> MIGA:  Five Hundred Thousand Dollars ($500,000);

> OneBeacon:  One Hundred Thousand Dollars ($114,000); and

> Travelers: Two Million Dollars ($2,000,000).

### 9.3       Reserve Accounts

As set forth in the Trust Agreement, the Trustee shall establish Reserves for various purposes.

23

Plan of Reorganization

**9.4      No Execution**

All property held in the Trust will remain property of the Trust until such time as the property actually has been paid to and received by a Person entitled to receive payment pursuant to the terms of the Plan, Confirmation Order and Trust Documents. Except as expressly provided in the Plan, Confirmation Order and the Trust Documents, the Trust shall not be responsible for any Claims against the Debtor.

**9.5      Trust Distributions**

9.5.1   No Tort Claimant shall receive any payment from a Trust unless and until the Tort Claimant has executed a written release of any and all past, present, and future Claims, whether actual or alleged, known or unknown, accrued or not accrued, suspected or unsuspected, against any of the Protected Parties, any Person insured by any of the Settling Insurers, and any of the Settling insurers' reinsurers or retrocessionaires that, directly or indirectly, arise out of, relate to, or are in connection with the Tort Claims, the injuries or damages alleged by the Tort Claimants, or the Policies. This release shall not include the Province as a released party. This release may be incorporated into the ballot for voting on the Plan. The Trust shall be obligated to provide copies of the Tort Claimants' releases to any of the Settling Insurers that request them.

9.5.2   Before the Trustee makes the first distribution to any Tort Claimant, the Trustee shall determine whether any payment ("Conditional Payment") made pursuant to Section 1395y (b) (2) (B) of the Medicare Secondary Payer Act, codified at 42 U.S.C. § 1395y, and the regulations promulgated thereunder, found at 42 C.F.R. § 411.1 *et seq.* ("MSPA"), has been made to or on behalf of any Tort Claimant. If any Conditional Payment has been made to or on behalf of any Tort Claimant, the Trustee shall, within the respective time period called for by the MSPA, (i) reimburse the appropriate Medicare Trust Fund for the appropriate amount, and (ii) submit the required information for any Tort Claimant to the appropriate agency of the United States government.

9.5.2.1      Before the Trustee makes the first payment to any Tort Claimant, that claimant must provide a third-party vendor, which vendor has been approved by the Committee or the Trustee ("Approved Vendor") or, if no Approved Vendor has been retained by or on behalf of a Tort Claimant, the Trustee, with his or her name, date of birth, Social Security Number or Health Insurance Claim Number (collectively, the "Personal Information"), a signed Social Security Release Form or a Medicare Release form, or both, when requested by the Approved Vendor or the Trustee, as the case may be, and any other information or documents reasonably required to comply with Sections 9.5.2.2, 9.5.2.3, and 9.5.2.4.

9.5.2.2      Each Tort Claimant who claims that he or she is eligible to receive, is receiving, or has received Medicare benefits (a "Medicare Beneficiary") expressly authorizes the Approved Vendor or the Trustee, as the case may be, to use the Personal Information to submit a query to the Social Security Administration to verify whether he or she is a Medicare Beneficiary. Before the Trustee will pay any Tort Claimant who claims that he or she is not a

24

Medicare Beneficiary, the Tort Claimant will provide a letter from an Approved Vendor supported by documentation from the Social Security Administration, received within ninety (90) days prior to the Trustee making such payment or, if no Approved Vendor has been retained by or on behalf of a Tort Claimant, documentation from the Social Security Administration received within ninety (90) days prior to the Trustee making such payment, confirming that the Tort Claimant is not a Medicare Beneficiary. In the absence of such a confirming letter or documentation, each Tort Claimant will be presumed to be a Medicare Beneficiary.

9.5.2.3 Each Medicare Beneficiary expressly authorizes the Approved Vendor or the Trustee, as the case may be, to use the Personal Information to submit a query to the Centers for Medicare and Medicaid Services ("CMS"), the CMS Coordination of Benefits Contractor ("COBC"), and/or the Medicare Secondary Payer Recovery Contractor ("MSPRC") to determine the amount of each and every Conditional Payment, if any, subject to reimbursement by a "primary plan," as the phrase is defined in Section 1395y(b)(2) of the MSPA. Before the Trustee will pay any Medicare Beneficiary, such Medicare Beneficiary must provide the Trustee with a letter from the MSPRC ("MSPRC Letter") received within sixty (60) days prior to the Trustee making such payment: (a) setting forth the Conditional Payment estimate made to or on behalf of the Medicare Beneficiary that is subject to reimbursement by a "primary plan," as the phrase is defined in Section 1395y(b)(2) of the MSPA; or (b) stating that no such Conditional Payment has been made to or on behalf of the Medicare Beneficiary. If the MSPRC Letter sets forth a Conditional Payment estimate, no payment shall be made to such Medicare Beneficiary before the Trustee sets aside a reserve for the full amount of the Conditional Payment estimate, or pays a negotiated amount agreed to by the MSPRC and the Medicare Beneficiary. If the Trustee sets aside a reserve for the full amount of the Conditional Payment estimate, that reserved amount shall be withheld from the payment to the Medicare Beneficiary until the Conditional Payment estimate has been paid in full or a negotiated amount that has been agreed to by the MSPRC and the Medicare Beneficiary has been paid.

9.5.2.4 The failure by one or more Medicare Beneficiaries or other Tort Claimants to comply with these provisions shall not delay or impair the payment by the Trustee to any other Medicare Beneficiary or other Tort Claimant complying with these provisions.

9.5.2.5 If the Tort Claimant is the estate of a Tort Claimant, then the letters or documentation required pursuant to Section 9.5.2.2 and 9.5.2.3 need not be received by the Trustee within ninety (90) days of the date of payment by the Trustee to such claimant, provided that the date of death of the Tort Claimant is at least ninety (90) days prior to the date of such letters or documentation.

9.5.2.6 Notwithstanding any of the above, a Tort Claimant can elect to provide the Trustee with the documentation from the Social Security Administration required pursuant to Section 9.5.2.2, or a Medicare Beneficiary

can elect to provide the Trustee with the letter from MSPRC required pursuant to Section 9.5.2.3, without retaining an Approved Vendor and without providing an Approved Vendor or the Trustee with his or her Personal Information, except to the extent that such information is disclosed in such documentation or letter.

9.5.2.7    No Tort Claimant shall receive any payment from a Trust unless and until the Tort Claimant has executed a written release of any and all past, present, and future Claims, whether actual or alleged, known or unknown, accrued or not accrued, suspected or unsuspected, against any of the Diocese Parties, the Settling insurers, any Person insured by any of the Settling insurers, and any of the Settling insurers' reinsurers or retrocessionaires that, directly or indirectly, arise out of, relate to, or are in connection with the Tort Claims, the injuries or damages alleged by the Tort Claimants, or the Policies; provided, however, that nothing in this Section 9.5.2.7 shall require any Tort Claimant to release any Claims against the Province as a released party.  This release may be incorporated into the ballot for voting on the Plan.  The Trust shall be obligated to provide copies of the Tort Claimants' releases to any of the Settling Insurers that request them.

9.5.2.8    The Trust shall defend, indemnify and hold harmless the Protected Parties from any Claims in respect of Medicare Claims reporting and payment obligations arising out of, relating to, or in connection with Tort Claims, including any obligations owing or potentially owing under MMSEA or MSP, and any Claims related to the Trust's obligations under Sections 9.5.2.1 through 9.5.2.8.  The Trust shall not create a reserve for this potential obligation.

9.5.2.9    In the event of a violation or breach of Sections 9.5.2.1 through 9.5.2.8 herein, the Trust shall be liable to the Settling Insurers for compensatory damages, injunctive relief, attorneys' fees, costs, and expenses resulting from such breach or violation.

Subject to the provisions of Section 9.5.2 and its subsections, the Diocese agrees that the Trust and the Plan shall provide that the assets in the Trust shall be used solely for payment of indemnity and expenses relating to reimbursing the United States government for reimbursement obligations for Conditional Payments made pursuant to the MSPA applicable to any given Medicare Beneficiary and, after satisfaction thereof, to such Medicare Beneficiaries and Tort Claimants.  Except for the payment of the Settlement Amounts, none of the Settling insurers shall be obligated to make any other payments, including any payments to the Trust.

9.5.3    **No Admission**

Section 9.5.2 and its subsections are intended to be purely prophylactic in nature, and does not imply, and shall not constitute an admission that the Debtor, or any Settling Insurer are in fact "applicable plans" with the meaning of Medicare, Medicaid and SCHIP Extension Act of 2007, or that they have any legal obligation to report any actions undertaken by the Trust or

26

contributions to the Trust under Medicare, Medicaid and SCHIP Extension Act of 2007 or any other statute or regulation.

### 9.5.4   Delay Re Failure To Comply

The failure by one or more Medicare Beneficiaries or other Tort Claimants to comply with these provisions shall not delay or impair the payment by the Trustee to any other Medicare Beneficiary or other Tort Claimant complying with these provisions.

## SECTION X
## MEANS FOR IMPLEMENTATION OF THE PLAN

### 10.1   Funding of Plan

Cash in the total amounts set forth in Section 9.2 shall be contributed by wire transfer to the Trust by or on behalf of the Debtor and Settling Insurers. The source of the payments to the Trust, the payments to the other creditors and to the Reorganized Debtor for post Effective Date operating capital shall be Cash on hand, the proceeds of the Insurance Settlement Agreements, sales of real and personal property (including the sales under the Insurance Settlement Agreements), the Placid Enterprises, LLC Loan, borrowings and contributions.

On entry of a Final Order confirming the Plan, the Debtor and the Reorganized Debtor shall be authorized to enter into the Placid Enterprises, LLC Loan and to perform all of the borrower's obligations thereunder. The Placid Enterprises, LLC Loan shall be binding on the Reorganized Debtor and any successors thereof.

The Diocese is creating operating budgets to minimize expenses while continuing to provide for pastoral and administrative programs as required by Canon Law. The goal for the annual appeal and the rate for the assessment to parishes have been raised. The Debtor is confident through increased giving, through decreased expenses, by having current and accurate financial reporting, and through the pledges of cooperation by the various parishes and programs to assist in Debtor's reorganization efforts, that Debtor will reorganize successfully. Readers are referred to the Disclosure Statement for further detail on the Debtor's efforts and goals to emerge successfully from bankruptcy.

### 10.2   Insurance Settlement Agreements

The Insurance Settlement Agreements are binding on the Trust, the Diocese Parties, and the Settling Insurers, and any successors of the Trust, the Diocese Parties, and the Settling Insurers.

### 10.3   Debtor Waiver and Release of Claims Against Settling Insurers

On the Effective Date, in consideration of the contributions and other consideration to be provided by each Settling Insurer, the Debtor irrevocably and unconditionally, without limitation, shall release, acquit, and forever discharge all Settling Insurers from any and all Claims and/or Causes of Action against any Settling Insurer, or the property thereof, except that the Debtor and Catholic Mutual shall retain all rights and obligations under any claims-made

27

Plan of Reorganization

certificates or policies of insurance issued or allegedly issued by Catholic Mutual to the Diocese Parties for a policy period July 1, 2014 through July 1, 2015 and the two immediately prior policy periods, *i.e.*, July 1, 2012 through July 1, 2013, and July 1, 2013 through July 1, 2014.

### 10.4     Additional Documentation; Non-Material Modifications

From and after the Effective Date, the Trustee, the Reorganized Debtor, and the Settling Insurers shall be authorized to enter into, execute, adopt, deliver and/or implement all contracts, leases, instruments, releases, and other agreements or documents necessary to effectuate or memorialize the settlements contained in this Plan without further Order of the Bankruptcy Court. Additionally, the Trustee, the Reorganized Debtor, and the Settling Insurers may make technical and/or immaterial alterations, amendments, modifications or supplements to the terms of any settlement contained in this Section X, subject to Bankruptcy Court approval, provided that the amendment or modification does not materially and adversely change the treatment of any holder of a Class 4 Claim without the prior written agreement of such holder. A Class of Claims that has accepted the Plan shall be deemed to have accepted the Plan, as altered, amended, modified or supplemented under this Section X, if the proposed alteration, amendment, modification or supplement does not materially and adversely change the treatment of the Claims within such Class. An Order of the Bankruptcy Court approving any amendment or modification made pursuant to this Section X shall constitute an Order in aid of consummation of the Plan and shall not require the re-solicitation of votes on the Plan.

### 10.5     Closing

Closing will be conducted in at such other location designated by the Debtor and the Committee, as soon as reasonably practicable following the Effective Date for the purpose of the Reorganized Debtor executing and delivering the Plan Documents and completing those actions necessary for the Reorganized Debtor to establish and fund the Trust and make other distributions required to be made upon, or promptly following, the Effective Date.  As soon as practicable after conditions set forth in Section XI  have been satisfied or waived in accordance with Section XI, the Trustee shall file notice of the Closing and the occurrence of the Effective Date.

### 10.6     Obligations of the Reorganized Debtor

The Reorganized Debtor will:

    a) In the exercise of its respective business judgment, review all Claims filed against the Estate except for Tort Claims and, if advisable, object to such Claims;

    b) After the Effective Date, not object to any Tort Claims. Notwithstanding the foregoing, the Reorganized Debtor may provide the Abuse Claims Reviewer with information regarding Tort Claims.

Plan of Reorganization

   c) Honor the Debtor's obligations arising under any settlement agreement that has been approved by the Bankruptcy Court; and,

   d) Perform all of its obligations under this Plan and Plan Documents, in each case, as and when the same become due or are to be performed.

### 10.7   Objections to Claims

Objections to a Claim (except for Tort Claims) as to which no objection is pending as of the Effective Date, must be filed by the Claims Objection Bar Date. Any objections to Claims by the Reorganized Debtor will be filed and served not later than sixty (60) days after the later of (i) the Effective Date or (ii) the date such Claim is filed, provided that the Reorganized Debtor may request (and the Bankruptcy Court may grant) extensions of such deadline, or of any Bankruptcy Court approved extensions thereof, by Filing a motion with the Bankruptcy Court without any requirement to provide notice to any Person, based upon a reasonable exercise of the Reorganized Debtor's business judgment. A motion seeking to extend the deadline to object to any Claim shall not be deemed an amendment to the Plan. No party other than the Trustee may object to a Tort Claim.

### 10.8   Provisions Governing Distributions

#### 10.8.1  Distribution Holders of Claims

Except as otherwise provided in the Plan, distributions under this Plan and the Plan Documents will be made only to the holders of Allowed Claims and in the case of Tort Claims, pursuant only to the Plan and the Trust Documents. Until a Disputed Claim becomes an Allowed Claim, the holder of that Disputed Claim will not receive any distribution otherwise provided to the Claimants under this Plan or the Plan Documents. If necessary in determining the amount of a Pro Rata distribution due to the holders of Allowed Claims in any class, the Reorganized Debtor or the Trustee, as applicable, will make the Pro Rata calculation as if all Unresolved Claims were Allowed Claims in the full amount Claimed or in the Estimated Amount. When an Unresolved Claim in any class becomes an Allowed Claim, the Reorganized Debtor or the Trustee, as applicable, will make full or partial distributions, as applicable, with respect to such Allowed Claim, net of any setoff contemplated by the order, if any, allowing such Claim and/or any required withholding of applicable federal and state taxes.

#### 10.8.2  Transmittal of Distributions

Except as otherwise provided in this Plan, in the Plan Documents, or in an order of the Bankruptcy Court, distributions to be made under this Plan, Confirmation Order or Trust Documents to Tort Claimants will be made by the Trustee and distributions to all other Claimants will be made by the Reorganized Debtor. Distributions to Tort Claimants will be made (a) to the client trust account for attorneys of record of Tort Claimants, (b) if the Tort Claimant does not have an attorney of record, to the latest mailing address set forth in a proof of claim filed with the Bankruptcy Court by or on behalf of such Claimant, or to such other address as may be provided to the Reorganized Debtor or Trustee, as applicable, by such Claimant in

writing, or (c) if no such proof of claim has been filed and no written notice setting forth a mailing address is provided by or on behalf of such Claimant to the Reorganized Debtor or Trustee, as applicable, to the mailing address set forth in the schedules filed by the Debtor in this Case. Distributions to other Claimants will be made by wire or first class United States mail, postage prepaid, (a) to the client trust account for attorneys of record of the Claimant, (b) if the Claimant does not have an attorney of record, to the latest mailing address set forth in a proof of claim filed with the Bankruptcy Court by or on behalf of such Claimant, or to such other address as may be provided to the Reorganized Debtor, as applicable, by such Claimant in writing, or (c) if no such proof of claim has been filed and no written notice setting forth a mailing address is provided by or on behalf of such Claimant to the Reorganized Debtor, to the mailing address set forth in the schedules filed by the Debtor in these Case. If a Claimant's distribution is not mailed or is returned to the Reorganized Debtor or Trustee because of the absence of a proper mailing address, the Reorganized Debtor or Trustee, as the case may be, shall make a reasonable effort to locate or ascertain the correct mailing address for such Claimant from information generally available to the public and from such party's own records, but shall not be liable to such Claimant for having failed to find a correct mailing address. The Trustee shall have no liability to a Tort Claimant on account of distributions made to the client trust account of a Tort Claimant's attorney.

### 10.8.3  Timing of Distributions

Unless otherwise agreed by the Reorganized Debtor or Trustee, as applicable, and the recipient of a distribution under this Plan or the Plan Documents, whenever any payment to be made is due on a day other than a Business Day, such payment will instead be made on the next Business Day, with interest to the extent expressly contemplated by this Plan or any applicable agreement or instrument.

Any Claimant that is otherwise entitled to an undeliverable Distribution and that does not, within thirty (30) days after a Distribution is returned to the Trustee as undeliverable, or is deemed to be an undeliverable Distribution, provide the Trustee with a written notice asserting its claim to that undeliverable Distribution and setting forth a current, deliverable address will be deemed to waive any claim to such undeliverable Distribution and will be forever barred from receiving such undeliverable Distribution or asserting any Claim against the Reorganized Debtor, the Trust, the Trustee or their property. Any undeliverable Distributions that are not claimed under this Section will become available to distribute to other Claimants or be retained by the Reorganized Debtor in accordance with the Plan. Nothing in the Plan requires the Reorganized Debtor, the Trust or the Trustee to attempt to locate any Claimant whose Distribution is undeliverable.

### 10.8.4  Negotiation of Instrument

If an instrument delivered as a Distribution to a Claimant is not negotiated within one hundred and twenty (120) days after such instrument was sent to the Claimant, then the instrument shall be null and void, the Claimant shall be deemed to have waived such Distribution, and it shall become Cash available to the Trustee for any Trust purpose or the Reorganized Debtor, as the case may be.

Plan of Reorganization

### 10.8.5  Form of Distributions

Unless otherwise agreed by the Reorganized Debtor or Trustee, as applicable, and the recipient of a distribution under this Plan or the Plan Documents, all distributions will be made, at the option of the Reorganized Debtor or Trustee, by a check by first class mail, postage prepaid or wire transfer.

### 10.8.6  No Professional Fees or Expenses

No professional fees or expenses incurred by a Claimant will be paid by the Debtor, the Reorganized Debtor, or the Trustee with respect to any Claim except as specified in this Plan or the Trust Documents.

### 10.9   Reservation of Rights to Object to Claims Other Than Tort Claims

Unless a Claim is expressly described as an Allowed Claim pursuant to or under the Plan, or otherwise becomes an Allowed Claim prior to the Effective Date, upon the Effective Date, the Reorganized Debtor shall be deemed to have a reservation of any and all rights, interests and objections of the Debtor, or the Estate to any and all Claims and motions or requests for the payment of or on account of Claims, whether administrative expense, priority, secured or unsecured (but not Tort Claims), whether under the Bankruptcy Code, other applicable law or contract. The Debtor's failure to object to any Claim in the Chapter 11 Case shall be without prejudice to the Reorganized Debtor's rights to contest or otherwise defend against such Claim in the Bankruptcy Court as set forth in this Section when and if such Claim is sought to be enforced by the holder of such Claim.

### 10.10   Service of Objections

An objection to a Claim shall be deemed properly served on the holder of such Claim if the objector effects service by any of the following methods: (i) in accordance with Rule 4 of the Federal Rules of Civil Procedure, as modified and made applicable by Bankruptcy Rule 7004; (ii) to the extent counsel for such holder is unknown, by first class mail, postage prepaid, on the signatory on the Proof of Claim or other representative identified on the Proof of Claim or any attachment thereto; or (iii) by first class mail, postage prepaid, on any counsel that has appeared on the behalf of such holder in the Chapter 11 Case.

### 10.11   Determination of Claims

From and after the Effective Date, any Claim (except for Tort Claims) as to which a Proof of Claim or motion or request for payment was timely filed in the Chapter 11 Case or deemed timely filed by Order of the Bankruptcy Court, may be determined and (so long as such determination has not been stayed, reversed or amended and as to which determination (or any revision, modification or amendment thereof) the time to appeal or seek review or rehearing has expired and as to which no appeal or petition for review or rehearing was filed or, if filed, remains pending) liquidated pursuant to (i) an Order of the Bankruptcy Court, (ii) applicable bankruptcy law, (iii) agreement of the parties without the need for Bankruptcy Court approval, (iv) applicable non-bankruptcy law or (v) the lack of (a) an objection to such Claim, (b) an application to equitably subordinate such Claim and (c) an application to otherwise limit

31

recovery with respect to such Claim, filed by the Debtor, the Reorganized Debtor, or any other party in interest on or prior to any applicable deadline for Filing such objection or application with respect to such Claim. Any such Claim so determined and liquidated shall be deemed to be an Allowed Claim for such liquidated amount and shall be satisfied in accordance with the Plan. Nothing contained in this Section 10.11 shall constitute or be deemed a waiver of any Claims, rights, interests or Causes of Action that the Debtor or the Reorganized Debtor may have against any Person in connection with or arising out of any Claim or Claims, including any rights under 28 U.S.C. § 157. Notwithstanding the foregoing, no party in interest other than the Trustee may object to a Tort Claim.

### 10.12    No Distributions Pending Allowance

No payments or distributions will be made with respect to all or any portion of a Disputed Claim unless and until all objections to such Disputed Claim have been settled or withdrawn or have been determined by a Final Order, and the Disputed Claim has become an Allowed Claim; provided, however, that in the event that only a portion of such Claim is an Allowed Claim, the Reorganized Debtor may, in its discretion, make a distribution on account of the portion of such Claim that is an Allowed Claim.

### 10.13    Claim Estimation

In order to effectuate distributions pursuant to the Plan and avoid undue delay in the administration of the Chapter 11 Case, the Reorganized Debtor, after notice and a hearing (which notice may be limited to the holder of such Disputed Claim), shall have the right to seek an Order of the Bankruptcy Court or the District Court, pursuant to § 502(c) of the Bankruptcy Code, estimating or limiting, on account of a Disputed Claim, the amount of (i) property that must be withheld from or reserved for distribution purposes on account of such Disputed Claim(s), (ii) such Claim for allowance or disallowance purposes, or (iii) such Claim for any other purpose permitted under the Bankruptcy Code; provided, however, that the Bankruptcy Court or the District Court, as applicable, shall determine (i) whether such Claims are subject to estimation pursuant to § 502(c) of the Bankruptcy Code and (ii) the timing and procedures for such estimation proceedings, if any, such matters being beyond the scope of the Plan. Notwithstanding the foregoing, no party in interest except the Trustee may seek to estimate a Tort Claim.

### 10.14    Timing of Distributions S/A/P Claims

On the Effective Date, the Reorganized Debtor shall establish the S/A/P Claims Reserve for all Disputed S/A/P Claims and Allowed S/A/P Claims not paid prior to the Effective Date. As soon as practicable after (and to the extent) that a Disputed S/A/P Claim becomes an Allowed S/A/P Claim, the Reorganized Debtor shall make a payment from the S/A/P Claims Reserve to the holder of such Claim in the Allowed amount of such Claim. After (and to the extent) a Disputed S/A/P Claim is determined not to be an Allowed S/A/P Claim, the portion of the S/A/P Claims Reserve reserved for such Claim shall be released from the S/A/P Claims Reserve and distributed or retained by the Reorganized Debtor, as applicable, pursuant to the terms of the Plan.

32

### 10.15    Setoffs

The Reorganized Debtor may, to the extent permitted under applicable law, set off against any Allowed Claim and the distributions to be made pursuant to the Plan on account of such Allowed Claim, the Claims, rights and Causes of Action of any nature that the Reorganized Debtor may hold against the holder of such Allowed Claim that are not otherwise waived, released or compromised in accordance with the Plan; provided, however, that neither such a setoff nor the allowance of any Claim hereunder shall constitute a waiver or release by the Reorganized Debtor of any such Claims, rights and Causes of Action that the Reorganized Debtor possesses against such holder.

### 10.16    No Interest on Claims

Unless otherwise specifically provided for in the Plan, the Confirmation Order, or a postpetition agreement in writing between the Debtor and a holder of a Claim and approved by an Order of the Bankruptcy Court, postpetition interest shall not accrue or be paid on any Claim, and no holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any Claim. In addition, and without limiting the foregoing or any other provision of the Plan, Confirmation Order or Trust Agreement, interest shall not accrue on or be paid on any Disputed Claim in respect of the period from the Effective Date to the date a final distribution is made when and if such Disputed Claim becomes an Allowed Claim.

### 10.17    Withholding Taxes

The Reorganized Debtor shall comply with all withholding and reporting requirements imposed by any federal, state, local or foreign taxing authority, and all distributions hereunder shall be subject to any such withholding and reporting requirements. As a condition to making any distribution under the Plan, the Reorganized Debtor may require that the holder of an Allowed Claim provide such holder's taxpayer identification number and such other information and certification as may be deemed necessary to comply with applicable tax reporting and withholding laws.

### 10.18    Closing of the Case

As soon as practicable after the Effective Date, when the Reorganized Debtor deems appropriate, the Reorganized Debtor will seek authority from the Bankruptcy Court to close the Case in accordance with the Bankruptcy Code and the Bankruptcy Rules; provided, however, that entry of a final decree closing the Case shall, whether or not specified therein, be without prejudice to the right of the Reorganized Debtor, the Trustee, or any other party in interest to reopen the Case for any matter over which the Bankruptcy Court or the U.S. District Court for the District of Montana has retained jurisdiction under this Plan.  Any order closing these Case will provide that the Bankruptcy Court or the U.S. District Court for the District of Montana, as appropriate, will retain (a) jurisdiction to enforce, by injunctive relief or otherwise, the Confirmation Order, any other orders entered in these Case, and the obligations created by this Plan and the Plan Documents; and (b) all other jurisdiction and authority granted to it under this Plan and the Plan Documents.

Plan of Reorganization

### 10.19    No De Minimis Distributions

Notwithstanding anything to the contrary in this Plan, no payment of less than $100 will be made by the Reorganized Debtor or the Trustee to any Holder of an Allowed Claim. No consideration will be provided in lieu of the *de minimis* distributions that are not made under this Section. Allowed Claims that are entitled to a Pro Rata distribution of less than $100 shall continue to accrue until such time as the Pro Rata distribution on account of such Claim will be $100 or more.

### 10.20    Manner of Payments

Payments to domestic Claimants will be denominated in U.S. dollars and will be made by checks drawn on a domestic bank selected by the Trustee or, at the Trustee's option, by wire transfer from a domestic bank. Payments to foreign Claimants may be paid, at the Trustee's option, either in the same manner as payments to domestic entities or in any funds and by any means that are necessary or customary in the particular foreign jurisdiction.

**SECTION XI**
**CONDITIONS PRECEDENT**

### 11.1    Conditions to Effectiveness

The Effective Date will occur when each of the following conditions have been satisfied or waived in accordance with Section 11.2 of this Plan:

(a)    The Bankruptcy Court shall have entered a Final Order or Final Orders approving all Insurance Settlement Agreements and any appropriate judgments consistent therewith, in form and substance reasonably acceptable to each of those parties, and no stay of such Orders is in effect;

(b)    The Bankruptcy Court shall have entered the Confirmation Order in form and substance reasonably acceptable to the Reorganized Debtor, the Committee, the Settling Insurers and the Confirmation Order is a Final Order and no stay of such Order is in effect;

(c)    The Trustee and Reorganized Debtor have signed the Trust Agreement; and

(d)    The Debtor and the Settling Insurers have made the payments to the Trust described in Section 9.2 of the Plan.

### 11.2    Waiver of Conditions

Any condition set forth in Section XI of this Plan may be waived by the mutual written consent of the Proponents and Settling Insurers.

Plan of Reorganization

### 11.3    Non-Occurrence of Effective Date

Subject to further order of the Bankruptcy Court, in the event that the Effective Date does not occur within ninety (90) days of entry of a Final Order or Final Orders confirming the Plan and approving all Insurance Settlement Agreements, the Plan shall become null and void.  A statement shall be filed with the Court within three (3) Business Days after either the Effective Date or the occurrence of any event that renders the Plan null and void.

## SECTION XII
## EFFECTS OF PLAN CONFIRMATION AND DISCHARGE

### 12.1    Discharge

On the Effective Date, pursuant to Section 1141(d) of the Bankruptcy Code, the Debtor will be discharged from all liability for any and all Claims and Debts, known or unknown, whether or not giving rise to a right to payment or an equitable remedy, that arose, directly or indirectly, from any action, inaction, event, conduct, circumstance, happening, occurrence, agreement, or obligation of the Debtor, or the Debtor's Representatives before the Confirmation Date, or that otherwise arose before the Confirmation Date, including all interest, if any, on any such Claims and Debts, whether such interest accrued before or after the date of commencement of these Case, and including all Claims and Debts based upon or arising out of  Tort Claims (except as provided in Section 12.2) and from any liability of the kind specified in Sections 502(g), 502(h), and 502(i) of the Bankruptcy Code, whether or not (a) a proof of claim is filed or is deemed filed under Section 501 of the Bankruptcy Code; (b) such Claim is Allowed under this Plan; or (c) the holder of such Claim has accepted this Plan.  Nothing contained in this paragraph shall affect, impair or diminish the Debtor's indemnification obligations under the Insurance Settlement Agreements, which obligations are excepted from the Debtor's discharge.

### 12.2    Postpetition Tort Claims

Notwithstanding Section 12.1, Tort Claims against Debtor based on Abuse that happened after the Petition Date will not be discharged, released or impaired.  To the extent any such claim is against a Settling Insurer, such claim is the subject of injunctions for the benefit of the Settling Insurers.

### 12.3    Vesting of Assets

In accordance with §§ 1141 and 1123(a)(5) of the Bankruptcy Code, and except as otherwise provided in the Plan or the Confirmation Order, the Revested Assets shall revest in the Reorganized Debtor on the Effective Date free and clear of all liens, Claims, and interests of Claimants, including successor liability Claims. On and after the Effective Date, the Reorganized Debtor may operate and manage its affairs and may use, acquire and dispose of property without notice to any Person, and without supervision or approval by the Bankruptcy Court and free of any restrictions imposed by the Bankruptcy Code, Bankruptcy Rules, or the Bankruptcy Court, other than those restrictions expressly imposed by the Plan or the Confirmation Order.

### 12.4    Continued Existence of Reorganized Debtor

The Debtor will, as the Reorganized Debtor, continue to exist after the Effective Date as A separate entity in accordance with the applicable laws of the States of Montana, with all the powers of a not-for-profit, non-stock member corporation having tax-exempt status under 26 U.S.C. § 501(c)(3) under applicable law and without prejudice to any right to alter or terminate such existence under applicable state law, except as such rights may be limited and conditioned by the Plan and the documents and instruments executed and delivered in connection therewith.

### 12.5    Exculpation and Limitation of Liability

Except as expressly provided in this Plan, none of the Exculpated Parties will have or incur any liability to, or be subject to any right of action by, any holder of a Claim, any other party in interest, or any of their respective agents, employees, representatives, financial advisors, attorneys, or affiliates, or any of their successors or assigns, for any act or omission in arising out of, relating to, or in connection with this Chapter 11 Case, including the exercise of their respective business judgment and the performance of their respective fiduciary obligations, the pursuit of confirmation of the Plan, or the administration of the Plan or the Trust, except liability for their willful misconduct or gross negligence (provided however the Debtor and Reorganized Debtor will be discharged from any such liability for such acts or omissions occurring prior to the Effective Date) and in all respects, such parties will be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities under the Plan or in the context of the Case. Without limiting the generality of the foregoing, the Debtor and its officers, members, employees, attorneys, financial advisors, and other professionals shall be entitled to and granted the benefits of § 1125(e) of the Bankruptcy Code.

Settling Insurers, the Reorganized Debtor, the Trust, the Trustee and professionals employed by the foregoing shall not have any liability to any Person, including any governmental entity or insurer, on account of payments made to a Tort Claimant, including any liability under the Medicare Secondary Payer Act.

### 12.6    Channeling Injunction

In consideration of the undertakings of the Protected Parties pursuant to their respective settlements with the Debtor, the funding of the Trust, and other consideration, and to further preserve and promote the agreements between and among the Protected Parties and the protections afforded the Protected Parties, and pursuant to section 105 of the Bankruptcy Code:

(a)     any and all Channeled Claims are channeled into the Trust and shall be treated, administered, determined, and resolved under the procedures and protocols and in the amounts as established under the Plan and the Trust Documents as the sole and exclusive remedy for all holders of Channeled Claims; and

(b)     all Persons who have held or asserted, hold or assert, or may in the future hold or assert, any Channeled Claim are hereby permanently stayed, enjoined, barred and restrained from taking any action, directly or indirectly, for the purposes of asserting, enforcing, or attempting to assert or enforce any Channeled Claim against the Protected Parties, including:

36

Plan of Reorganization

(i)     commencing or continuing in any manner any action or other proceeding of any kind with respect to any Channeled Claim against any Protected Parties, or against the property of any Protected Parties;

(ii)    enforcing, attaching, collecting or recovering, by any manner or means, from any Protected Parties, or from the property of any Protected Parties, with respect to any such Channeled Claim, any judgment, award, decree, or order against any Protected Parties, or other person;

(iii)   creating, perfecting or enforcing any lien of any kind against any Protected Parties, or the property of any Protected Parties, with respect to any such Channeled Claim; and

(iv)   asserting, implementing or effectuating any Channeled Claim of any kind against:

        (1)    any obligation due any Protected Parties;

        (2)    any Protected Parties; or

        (3)    the property of any Protected Parties.

(v)    taking any act, in any manner, in any place whatsoever that does not conform to, or comply with, the provisions of the Plan;

(vi)    asserting or accomplishing any setoff, right of indemnity, subrogation, contribution, or recoupment of any kind against any obligation due any of the Protected Parties or the property of the Protected Parties.

### 12.7    Supplemental Injunction Preventing Prosecution Of Claims Against Settling Insurers

Pursuant to sections 105(a) and 363 of the Bankruptcy Code and in consideration of the undertakings of the Settling Insurers pursuant to the Insurance Settlement Agreements, including any of the Settling Insurers' purchases of Policies from the Diocese Parties free and clear of all Interests pursuant to section 363(f) of the Bankruptcy Code, any and all Persons who have held, now hold or who may in the future hold any Interests (including all debt holders, all equity holders, governmental, tax and regulatory authorities, lenders, trade and other creditors, Tort Claimants, Future Tort Claimants, other Insurers, and all others holding interests of any kind or nature whatsoever, including those Claims released or to be released pursuant Insurance Settlement Agreements) against any of the Protected Parties (or any Person insured by any of the Settling Insurers arising out of, relating to, or in connection with any Interest arising from, relating to, or in connection with the same personal injuries or damages asserted by Tort Claimants in this Case, in any jurisdiction) or the Policies that, directly or indirectly, arise from, relate to, are in connection with any of the Policies, any Tort Claims or any Related Insurance Claims, are hereby permanently stayed, enjoined, barred, and restrained from taking any action, directly or indirectly, to assert, enforce or attempt to assert or enforce any such interest against the Settling Insurers and/or the Policies.

37

**12.8    Insurance Settlement Agreement Injunctions**

Any injunction contained in an Insurance Settlement Agreement is incorporated into the Plan by reference, is deemed fully set forth in this Plan, and is in addition to the injunctions expressly set forth in this Plan.

**12.9    Term of Injunctions or Stays and Confirmation of Settlements With Settling Insurers**

On the Effective Date, the injunctions provided for in this Plan shall be deemed issued, entered, valid and enforceable according to their terms and shall be permanent and irrevocable. All injunctions and/or stays provided for in this Plan, the injunctive provisions of sections 524 and 1141 of the Bankruptcy Code, and all injunctions or stays protecting any Settling Insurer that has purchased its Policies in a Section 363 Sale, are permanent and will remain in full force and effect following the Effective Date and are not subject to being vacated or modified. The Insurance Settlement Agreements previously authorized by the Bankruptcy Court are hereby affirmed and any obligations of Debtor with respect to such Insurance Settlement Agreements are excepted from the Debtor's discharge and shall be assumed by the Reorganized Debtor and Trust, as applicable, on the Effective Date.

**12.10    Limitation of Injunction and Discharge**

Notwithstanding any provision of this Plan, the foregoing injunctions and discharge preventing prosecution of Tort Claims against Protected Parties provides absolutely no protection to (i) a Perpetrator or (ii) the Holy See.

**SECTION XIII**
**TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

**13.1    Assumed Employee and Retiree Benefit Plans**

To the extent not previously assumed, all employee and retiree benefit plans to which the Debtor are a party will be deemed assumed by the Reorganized Debtor on the Effective Date.

**13.2    General; Assumed if Not Rejected**

Subject to the requirements of Section 365 of the Bankruptcy Code, all executory contracts and unexpired leases of the Debtor that have not been rejected by order of the Bankruptcy Court or are not the subject of a motion to reject pending on the Confirmation Date will be deemed assumed by the Reorganized Debtor on the Effective Date. If any party to an executory contract or unexpired lease that is being assumed objects to such assumption, the Bankruptcy Court may conduct a hearing on such objection on any date that is either mutually agreeable to the parties or fixed by the Bankruptcy Court. All payments to cure defaults that may be required under Section 365(b) (1) of the Bankruptcy Code will be made by the Reorganized Debtor. In the event of a dispute regarding the amount of any such payments, or the ability of the Debtor to provide adequate assurance of future performance, the Reorganized Debtor will make any payments required by Section 365(b)(1) of the Bankruptcy Code after the entry of the Final Order resolving such dispute.

### 13.3    Claims for Contract Rejection

All proofs of claim with respect to Claims arising from the rejection of executory contracts or unexpired leases must be filed with the Bankruptcy Court within 30 days after the Effective Date or such Claims will be forever barred. If any order providing for the rejection of an executory contract or unexpired lease did not provide a deadline for the filing of Claims arising from such rejection, proofs of Claim with respect thereto must be filed within 30 days after the later to occur of (a) the Effective Date or, (b) if the order is entered after the Effective Date, the date such order becomes a Final Order, or such Claims will be forever barred.

### SECTION XIV
### COMMITMENTS

### 14.1    Nonmonetary Commitments – Schedule to be Filed Later

### SECTION XV
### MISCELLANEOUS PROVISIONS.

### 15.1    Retention of Jurisdiction

Notwithstanding entry of the Confirmation Order or the occurrence of the Effective Date:

15.1.1  Except as otherwise set forth in this Plan or in the Confirmation Order, the Bankruptcy Court will retain jurisdiction over all matters arising under, in furtherance of, or in connection with this Plan, including the following:

a) The determination of objections to Disputed Claims; the determination of requests for payment of Claims entitled to priority under Section 507 of the Bankruptcy Code, including compensation of and reimbursement of expenses of parties entitled thereto;

b) The resolution of controversies and disputes regarding interpretation and implementation of this Plan and the Plan Documents;

c) The granting of relief in aid of this Plan and the Plan Documents including the entry of appropriate orders (which may include removal of actions in non-Bankruptcy Court forums to the Bankruptcy Court, contempt or other sanctions) to protect the Protected Parties from actions prohibited under this Plan or the Plan Documents;

d) Amendments to and modifications of this Plan;

e) Subject to the limitations and exclusions described above, the determination of any and all applications, adversary

Plan of Reorganization

proceedings, and contested or litigated matters pending on the Effective Date and;

f) The closing of this Case.

On the Effective Date, all actions removed by the Debtor or any other Co-Defendant during this Case shall be remanded to the Court from which they were removed and can continue against the Debtor and any other Entity who is not a Settling Insurer, only to the extent set forth in the Plan. Any party to the removed action may submit an order, with notice only to the other parties to the removed action, providing for remand of the action.

### 15.2    Modification of Plan

The Proponents reserve the right, in accordance with the Bankruptcy Code, to amend, modify or withdraw this Plan prior to the entry of the Confirmation Order. After the entry of the Confirmation Order, the Proponents may, upon order, amend or modify this Plan in accordance with Section 1127(b) of the Bankruptcy Code, or remedy any defect or omission or reconcile any inconsistency in this Plan in such manner as may be necessary to carry out the purpose and intent of this Plan.

### 15.3    Severability

If, before confirmation, the Bankruptcy Court holds that any Plan term or provision is invalid, void, or unenforceable, the Bankruptcy Court may alter or interpret that term or provision so that it is valid and enforceable to the maximum extent possible consistent with the original purpose of that term or provision. That term or provision will then be applicable as altered or interpreted, except if such term or provision is inconsistent with the intent of any of the Plan Proponents, in which case the Plan may be unilaterally withdrawn by such Plan Proponents. Notwithstanding any such holding, alteration, or interpretation, the Plan's remaining terms and provisions will remain in full force and effect and will in no way be affected, impaired, or invalidated. The Confirmation Order will constitute a judicial determination providing that each Plan term and provision, as it may have been altered or interpreted in accordance with this Section, is valid and enforceable under its terms. In the event of a successful collateral attack on any provision of this Plan (i.e., an attack other than through a direct appeal of the Confirmation Order), the remaining provisions of this Plan will remain binding on the Debtor, the Reorganized Debtor, the Trustee, the Committee, all Tort Claimants, all Claimants, and all other parties in interest.

### 15.4    Section 1146 Exemption

(a)    Pursuant to Bankruptcy Code Section 1146(c) any transfer of property pursuant to the Plan will not be subject to any document, recording tax, stamp tax, or similar tax, mortgage tax, real estate transfer tax, or other governmental assessment in the United States, and the Confirmation Order will direct the appropriate state or local governmental officials and/or agents to forego the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment. The Bankruptcy Code Section 1146 exemption

40

applies, to properties transferred within 5 years of the Effective Date, including: Legendary Lodge; Cemetery Property, First Street Property.

**15.5    Headings**

The headings of the Sections of this Plan are inserted for convenience only and will not affect the interpretation hereof.

**15.6    Notices**

All notices or requests to the Reorganized Debtor in connection with this Plan shall be in writing and served either by (i) United States mail, postage prepaid, (ii) hand delivery, or (iii) reputable overnight delivery service, all charges prepaid, and shall be deemed given when received by the following parties:

If to the Debtor or Reorganized Debtor:

>    Roman Catholic Bishop of Helena, Montana
>    Attn:  Father John Robertson
>    515 N. Ewing
>    Helena, MT  59601

With a copy to:

>    ELSAESSER JARZABEK ANDERSON
>         ELLIOTT & MACDONALD, CHTD
>    Attn:  J. Ford Elsaesser, Esq.
>    Attn:  Bruce A. Anderson, Esq.
>    320 East Neider Avenue, Suite 102
>    Coeur d'Alene, ID  83815

If to the Trustee:

>    Omni Management Group, LLC
>    Attn:  Eric Schwarz
>    5955 DeSoto Avenue, Suite 100
>    Woodland Hills, CA 91367

With a copy to:

>    James I. Stang, Esq.
>    Ilan D. Scharf, Esq.
>    Pachulski Stang Ziehl & Jones LLP
>    10100 Santa Monica Boulevard, 13th Floor
>    Los Angeles, CA 90067

41

### 15.7    Notices to Claimants

All notices and requests to a Person holding any Claim will be sent to them at the last known address listed for such Person with the Bankruptcy Court or to the last known address of their attorney of record. The holder of a Claim may designate in writing any other address, which designation will be effective upon actual receipt by the Reorganized Debtor and the Trustee. Any Person entitled to receive notice under this Plan will have the obligation to provide the Reorganized Debtor and the Trustee with such Person's or Entity's current address for notice purposes. The Reorganized Debtor and Trustee will have no obligation to attempt to locate a more current address in the event any notice proves to be undeliverable to the most recent address which has been provided to the Reorganized Debtor and the Trustee.

### 15.8    Post-Confirmation Court Approval

Any action requiring Bankruptcy Court, U.S. District Court or state court approval after the Effective Date will require the Person seeking such approval to file an application, motion, or other request with the Bankruptcy Court, U.S. District Court, or state court, as applicable, and obtain a Final Order approving such action before the requested action may be taken. The Person filing such application, motion, or other request shall serve such application, motion, or other request, together with a notice setting forth the time in which objections must be filed with the court, on the Reorganized Debtor, the Committee, and the Trustee by first-class mail, electronic mail, ECF, overnight courier, facsimile, or hand delivery. Unless the court orders otherwise, all notices shall provide the recipients at least 21 days in which to file an objection to the application, motion, or other request. If no objection is timely filed, the court may authorize the proposed action without further notice or a hearing. If an objection is timely filed, the court will determine whether to conduct a hearing, or to require the submission of further documentation, prior to ruling on the application, motion, or other request.

### 15.9    Election Pursuant to Section 1129(b) of the Bankruptcy Code

If necessary, the Proponents hereby request confirmation of the Plan pursuant to Section 1129(b) of the Bankruptcy Code if the requirements of all provisions of Section 1129(a) of the Bankruptcy Code, except Section (a)(8) thereof, are met with regard to the Plan. In determining whether the requirements of Section 1129(a)(8) of the Bankruptcy Code have been met, any Class that does not contain as an element thereof an Allowed Claim or a Claim temporarily allowed under Bankruptcy Rule 3018 as of the date fixed by the Bankruptcy Court for filing acceptances or rejections of this Plan shall be deemed deleted from this Plan for purposes of voting to accept or reject this Plan and for purposes of determining acceptance or rejection of this Plan by such Class.

### 15.10    Consummation of the Plan

The Proponents reserve the right to request that the Confirmation Order include a finding by the Bankruptcy Court that Bankruptcy Rule 3020(e) shall not apply to the Confirmation Order.

Plan of Reorganization

### 15.11   No Admission

Nothing contained in this Plan constitutes an admission or denial by any party of liability for, or the validity, priority, amount, or extent of any Claim, lien, or security interest asserted against the Debtor or against any third party.

### 15.12   Current Insurance Coverage

The Group One and Group Two settlements have no effect on Debtor's current and existing insurance coverage.

### 15.13   Waivers

Except as otherwise provided in the Plan or in the Confirmation Order, any term of the Plan may be waived by the party benefited by the term to be waived.

### 15.14   Setoffs, Recoupments, and Defenses

With the exception of the Sections of the Plan concerning the Tort Claims, nothing contained in the Plan shall constitute a waiver or release by the Debtor, Reorganized Debtor, Settling Insurers, or Trustee of any rights of setoff or recoupment, or of any defense, they may have with respect to any Claim (including rights under Section 502(d) of the Bankruptcy Code). Except as otherwise provided in the Plan or in the Confirmation Order or in agreements previously approved by a Final Order, the Debtor, Reorganized Debtor, Settling Insurers, or Trustee may, but will not be required to, set off against any Claim or any Distributions with respect to such Claim, any and all of the Claims, rights and Causes of Action of any nature that the Debtor, the Reorganized Debtor, Settling Insurers, or Trustee, as applicable, may hold against the holder of such Claim; provided, however, that neither the failure to effect such a setoff, the allowance of any Claim hereunder, the payment of any Distribution hereunder or any other action or omission of the Debtor, Reorganized Debtor, Settling Insurers, or Trustee, nor any provision of the Plan, shall constitute a waiver or release by the Debtor, the Reorganized Debtor, Settling Insurers, or Trustee, as applicable, of any such Claims, rights and Causes of Action that the Debtor, the Reorganized Debtor, Settling Insurers, or Trustee, as applicable, may possess against such holder.

### 15.15   Withdrawal or Revocation of the Plan

The Proponents reserve the right to revoke or withdraw the Plan prior to the Confirmation Date but the consent of all Proponents is required. If one Proponent revokes or withdraws the Plan, the other Proponent(s) may proceed as if the remaining Proponent(s) was the sole Proponent when the Plan originally was filed. If the Plan is revoked or withdrawn, or if the Confirmation Date does not occur, the Plan shall have no force and effect and in such event nothing contained herein shall be deemed to constitute a waiver or release of any Claims by or against the Estate or any other Person, or to prejudice in any other manner the rights of a Proponent, whether one or more, or any other entity in further proceedings involving a Proponent or Proponents and specifically shall not modify or affect the rights of any party under any prior orders of the Bankruptcy Court.

Plan of Reorganization

### 15.16   Default

Except as otherwise provided in the Plan or in the Confirmation Order, in the event the Reorganized Debtor, a Settling Insurer, or the Trustee shall default in the performance of any of their respective obligations under the Plan or under any of the Plan Documents and shall not have cured such a default within any applicable cure period (or, if no cure period is specified in the Plan or Plan Documents or in any instrument issued to or retained by a Claimant under the Plan, then within 30 days after receipt of written notice of default), then the entity to whom the performance is due may pursue such remedies as are available at law or in equity.  An event of default occurring with respect to one Claim shall not be an event of default with respect to any other Claim.

### 15.17   Governing Law

Subject to the Insurance Settlement Agreements of this Plan, except to the extent that federal law (including the Bankruptcy Code or Bankruptcy Rules) is applicable, the rights and obligations arising under the Plan or under the Plan Documents shall be governed by and construed and enforced in accordance with the laws of the State of Montana without giving effect to the principles of conflicts of laws thereof.

### 15.18   Reservation of Rights

If the Plan is not confirmed by a Final Order, or if the Plan is confirmed and the Effective Date does not occur, the rights of all parties in interest in the Case are and will be reserved in full.  Any concessions or settlement reflected herein, if any, are made for purposes of the Plan only, and if the Plan does not become effective, no party in interest in the Case shall be bound or deemed prejudiced by any such concession or settlement.

### 15.19   Controlling Documents

Nothing in this Plan shall diminish the rights of any Settling Insurer under the Insurance Settlement Agreements.  To the extent this Plan affords less protection or benefits to the Settling Insurers than the Insurance Settlement Agreements, the Insurance Settlement Agreements shall control.

### 15.20   Successors and Assigns

The Plan shall be binding upon and inure to the benefit of the Debtor, the Reorganized Debtor, all Claimants and all other parties in interest affected thereby and their respective successors, heirs, legal representatives and assigns.

### 15.21   Direction to a Party

On and after the Effective Date, the Trust or the Reorganized Debtor, as applicable, may apply to the Bankruptcy Court for entry of an Order directing any Person to execute or deliver or to join in the execution or delivery of any instrument or document reasonably necessary or reasonably appropriate to effect a transfer of properties dealt with by the Plan, and to perform

Plan of Reorganization

any other act (including satisfaction of any lien or security interest) that is reasonably necessary or reasonably appropriate for the consummation of the Plan.

### 15.22    Certain Actions

By reason of entry of the Confirmation Order, prior to, on or after the Effective Date (as appropriate), all matters provided for under the Plan that would otherwise require approval of the officers of the Debtor under the Plan, including (a) the adoption, execution, delivery, and implementation of all contracts, leases, instruments, releases, and other agreements or documents related to the Plan, and (b) the adoption, execution, and implementation of other matters provided for under the Plan involving the Debtor or organizational structure of the Debtor, shall be deemed to have occurred and shall be in effect prior to, on or after the Effective Date (as appropriate), pursuant applicable non-bankruptcy law, without any requirement of further action by the officers of the Debtor.

### 15.23    Rounding of Fractional Numbers

All fractional numbers, including payments or distributions under the Plan and Trust Documents shall be rounded (up or down) to the nearest whole number.

### 15.24    Dissolution of the Committee

On the Effective Date, the Committee shall dissolve automatically, whereupon their members, Professionals and agents shall be released from any further duties and responsibilities in the Chapter 11 Case and under the Bankruptcy Code, except that such parties shall continue to be bound by any obligations arising under confidentiality agreements, joint defense/common interest agreements (whether formal or informal), and protective orders entered during the Chapter 11 Case, which shall remain in full force and effect according to their terms, provided that such parties shall continue to have a right to be heard with respect to any and all (i) applications for Professional Claims and (ii) requests for compensation and reimbursement of expenses pursuant to § 503(b) of the Bankruptcy Code for making a substantial contribution in the Chapter 11 Case.

### 15.25    Saturday, Sunday or Legal Holiday

If any payment or act under the Plan should be required to be made or performed on a day that is not a Business Day, then the payment or act may be completed on the next succeeding day that is a Business Day, in which event the payment or act will be deemed to have been completed on the required day.

### 15.26    Exhibits

All Exhibits to this Plan are incorporated into and are a part of this Plan as if set forth in full herein.  The Exhibits are as follows:

Exhibit A – Allocation Plan
Exhibit B – Settlement Agreement, Release, and Policy Buyback

45

Exhibit C – Settlement Agreement, Buy Back of Policies, Release of Claims and
               Covenant Not to Sue
Exhibit D – Pro-Forma Financial Statements
Exhibit E – Trust Agreement

--Rest of Page Intentionally Left Blank--

Plan of Reorganization

## SECTION XVII
## RECOMMENDATIONS AND CONCLUSION

The Proponents strongly believe that Plan confirmation and implementation are preferable to any feasible alternative because the Plan will provide Claimants holding Claims with significantly greater recoveries than any available alternatives.

Dated: November 17, 2014

**ROMAN CATHOLIC BISHOP OF HELENA, MONTANA, a Montana Religious Corporation Sole,**

*Debtor and Debtor-in-Possession*

By: _____
    Rev. Msgr. Kevin S. O'Neill
    Vicar General

ELSAESSER JARZABEK ANDERSON ELLIOTT & MACDONALD, CHTD

_____
J. Ford Elsaesser, Esq.
Bruce A. Anderson, Esq.
320 East Neider Avenue
Suite 102
Coeur d'Alene, ID  83815
(208) 667-2900


PACHULSKI STANG ZIEHL & JONES LLP

_____
James I. Stang, Esq.
Ilan D. Scharf, Esq.
10100 Santa Monica Boulevard, 13th Floor
Los Angeles, CA 90067
(310) 277-6910

Attorneys for the Official Committee of Unsecured Claimants

Plan of Reorganization

## SECTION XVII
## RECOMMENDATIONS AND CONCLUSION

The Proponents strongly believe that Plan confirmation and implementation are preferable to any feasible alternative because the Plan will provide Claimants holding Claims with significantly greater recoveries than any available alternatives.

Dated: November 17, 2014

**ROMAN CATHOLIC BISHOP OF HELENA, MONTANA, a Montana Religious Corporation Sole,**

*Debtor and Debtor-in-Possession*


By: _____
    Rev. Msgr. Kevin S. O'Neill
    Vicar General

ELSAESSER JARZABEK ANDERSON ELLIOTT & MACDONALD, CHTD

_____
J. Ford Elsaesser, Esq.
Bruce A. Anderson, Esq.
320 East Neider Avenue
Suite 102
Coeur d'Alene, ID  83815
(208) 667-2900


PACHULSKI STANG ZIEHL & JONES LLP

_____
James I. Stang, Esq.
Ilan D. Scharf, Esq.
10100 Santa Monica Boulevard, 13th Floor
Los Angeles, CA 90067
(310) 277-6910

Attorneys for the Official Committee of Unsecured Claimants

47

Plan of Reorganization

<u>CERTIFICATE OF SERVICE</u>

I, Bruce A. Anderson, declare as follows:

I am employed by Elsaesser Jarzabek Anderson Elliott & Macdonald, Chtd., Coeur d'Alene, Idaho; I am over the age of eighteen years and not a party to this action; the firm's business address is 320 East Neider Avenue, Suite 102, Coeur d'Alene, Idaho 83815.

I certify that on November 17, 2014, I served the foregoing PLAN OF REORGANIZATION on all ECF participants as indicated on the Court's ECF system.

I swear under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

Dated: November 17, 2014

ELSAESSER JARZABEK ANDERSON
ELLIOTT & MACDONALD, CHTD.

*/s/ Bruce A. Anderson*
Bruce A. Anderson

48