UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MONTANA

| | |
|---|---|
| In Re:<br><br>Roman Catholic Bishop of Helena, Montana,<br>a Montana Religious Corporation Sole,<br><br>Debtor-In-Possession | Chapter 11<br><br>Case No. 14-60074 |

**FINDINGS OF FACT AND CONCLUSIONS OF LAW REGARDING
SECOND AMENDED JOINT PLAN OF REORGANIZATION PROPOSED
BY THE ROMAN CATHOLIC BISHOP OF HELENA, MONTANA
AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS**

A hearing was held before this Court on March 4, 2015, to consider confirmation of the Second Amended Joint Plan of Reorganization Proposed by the Roman Catholic Bishop of Helena, Montana, and the Official Committee of Unsecured Creditors (the "Plan") filed by the Plan Proponents [Docket No. 473]. The Court has examined the record compiled in this Chapter 11 Case, and has considered, among other things: (i) the First Amended Plan of Reorganization Proposed by the Roman Catholic Bishop of Helena, Montana, and the Official Committee of Unsecured Creditors and all schedules and exhibits thereto (the "First Amended Plan") [Docket No. 418]; (ii) the Notice of Intended Amendments to First Amended Joint Plan of Reorganization [Docket No. 460]; (iii) the Disclosure Statement For First Amended Joint Chapter 11 Plan of Reorganization Proposed by the Roman Catholic Bishop of Helena, Montana, and the Official Committee Of Unsecured Creditors and all schedules and exhibits thereto [Docket No. 419]; (iv) the Plan Documents; (v) the Debtor's Memorandum In Support Of Confirmation Of First Amended Joint Chapter 11 Plan Of Reorganization Proposed By The Roman Catholic Bishop Of Helena, Montana [Docket No. 464]; (vi) Certification Of Catherine Nownes-Whitaker of Omni Management Acquisition Corp. With Respect To Solicitation and

Tabulation of Votes with Respect to the First Amended Joint Plan of Reorganization Proposed by the Roman Catholic Bishop of Helena, Montana, and the Official Committee of Unsecured Creditors (the "Voting Declaration") [Docket No.463]; (vii) the Certificate of Service of Solicitation Package, Ballot and Release [Docket No. 448]; (viii) the Affidavit Re: of Service by Publication of Docket Nos. 424 and 426-4 [Docket No. 458] and (ix) the offers of proof, declarations in support of confirmation of the Plan [Docket Nos 464-1 and 464-2], evidence admitted and the arguments and representations of counsel at the Confirmation Hearing.  Based upon the foregoing and it appearing that no party has filed an objection to confirmation of the Plan, and after due deliberation and sufficient cause appearing therefor:

A.       Findings of Fact and Conclusions of Law.  The findings and conclusions set forth herein and in the record of the Confirmation Hearing constitute this Court's findings of fact and conclusions of law pursuant to Fed. R. Civ. P. 52, as made applicable herein by Bankruptcy Rules 7052 and 9014.  To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such pursuant to Bankruptcy Rule 7052.

B.       Jurisdiction and Venue.

1.       This Court has jurisdiction over this Chapter 11 Case and confirmation of the Plan pursuant to 28 U.S.C. §§ 157 and 1334.  Confirmation of the Plan is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (L) and (O) and this Court has jurisdiction to enter a final Order with respect thereto.  The Roman Catholic Bishop of Helena, Montana, (the "Debtor" or the "Diocese") is eligible to be a debtor under Section 109 of the Bankruptcy Code.  The Proponents are proper Plan proponents under Section 1121(a) of the Bankruptcy Code.  Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2.       The Policies are property of the Estate and therefore are subject to the exclusive core jurisdiction of this Court.  The sale of the Policies to fund the Plan in this case is within the Court's core jurisdiction pursuant to 28 U.S.C. § 157(b)(2)(N).  The Court has jurisdiction over the Interests in the Policies (including the Channeled Claims against the Diocese Parties) because the Policies are being sold.  11 U.S.C. §§ 363(e) and (f), 1123(a)(5)(D) and 1123(b)(4) and (5); 28 U.S.C. § 157(b)(2)(L), (N) and (O).

C.       <u>Judicial Notice</u>.  The Court takes judicial notice of the docket of the Debtor's Chapter 11 Case and related proceedings maintained by the Clerk of the Court, including, without limitation, all pleadings and other documents filed, all orders entered, and the transcripts of, and all evidence and arguments made, proffered or adduced at, the hearings held before the Court during the pendency of this Chapter 11 Case.

D.       <u>Solicitation and Notice</u>.  On January 21, 2015, the Court entered an Order (A) Approving First Amended Disclosure Statement in Support of First Amended Joint Plan of Reorganization, (B) Establishing Procedures for Solicitation and Tabulation of Votes, and (C) Setting Hearing on Confirmation of Joint Plan [Docket No. 422] (the "**Solicitation Procedures Order**").  The Solicitation Procedures Order, among other things, approved the Disclosure Statement as containing "adequate information" of a kind and in sufficient detail to enable hypothetical, reasonable investors typical of the Debtor's creditors to make an informed judgment whether to accept or reject the Plan.  Pursuant to the Solicitation Procedures Order, the Court required the Balloting Agent (as defined in the Solicitation Procedures Order), on behalf of the Plan Proponents, to distribute Solicitation Packages (as defined in the Solicitation Procedures Order) to:  (i) counsel to the Debtor; (ii) counsel to the Committee; (iii) the United States Trustee; (iv) all Entities that filed proofs of Claim on or before the date of the Notice of

Disclosure Statement Approval and Confirmation Hearing, except to the extent that a Claim was paid pursuant to, or expunged by, prior Order of the Bankruptcy Court; (v) all Entities listed in the Debtor's Schedules of assets and liabilities or any amendment(s) thereof (the "**Schedules**"), as holding liquidated, noncontingent, and undisputed Claims, in an amount greater than zero; (vi) all parties to executory contracts listed in the Schedules; (vii) the Internal Revenue Service; (viii) any Entity that has filed with the Court a notice of transfer of a Claim under Bankruptcy Rule 3001(e) prior to the date of the Notice of Disclosure Statement Approval (ix) the U.S. Department of Health and Human Services; (x) relevant state and local taxing authorities; (xi) any known holders of claims against the Debtor; (xii) the Attorney General for Montana; and (xiii) the Center for Medicare and Medicaid Services.  The Solicitation Packages consisted of: (1) the Solicitation Procedures Order; (2) the Notice of Disclosure Statement Approval and Confirmation Hearing; (3) the Disclosure Statement together with all exhibits thereto (including the Plan); and (4) a Ballot, where appropriate.  Notice in accordance with the Solicitation Procedures Order, including notice by publication as provided therein, satisfies the requirements of the Bankruptcy Code and Bankruptcy Rule 2002 and was fair and appropriate under the circumstances of the Chapter 11 Case.

The Balloting Agent and its professionals followed the procedures set forth in the Solicitation Procedures Order for soliciting acceptances of the Plan, as evidenced by the Voting Declaration and the Certificate of Service for the Solicitation Packages filed of record with the Court [Docket No. 448].  The Plan Proponents did not solicit acceptances or rejection of the Plan from any Claim Holder before the transmission of the Disclosure Statement.  Therefore, the Plan Proponents have complied with Section 1125 of the Bankruptcy Code.

**E.**      Voting.  The Solicitation Procedures Order fixed February 25, 2015 as the Voting Deadline.  The Balloting Agent has tabulated the Ballots accepting or rejecting the Plan in the Voting Declaration.  The amendments to the First Amended Plan are not material to the treatment of Creditors and do not require the Plan Proponents to solicit the acceptance or rejection of the Second Amended Plan.  As set forth in the Voting Declaration, the Plan Proponents have satisfied the ballot tabulation procedures set forth in the Solicitation Procedures Order and properly tabulated the Ballots received in connection with the Plan.

As set forth in the Voting Declaration, the Plan has been accepted or rejected, by each of the Classes as follows:

| CLASS | DESCRIPTION | IMPAIRMENT | VOTING |
|---|---|---|---|
| 1 | Other Priority Claims | Unimpaired | Deemed to Accept |
| 2 | Secured Claims | Unimpaired | Deemed to Accept |
| 3 | General Unsecured Convenience Claims | Unimpaired | Deemed to Accept |
| 4 | Tort Claims (Other than Future Tort Claims) | Impaired | Accepted |
| 5 | Future Tort Claims | Impaired | Accepted |
| 6 | General Unsecured Claims | Impaired | Accepted |
| 7 | Penalty Claims | Impaired | Deemed to Reject |
| 8 | Annuitant Claims | Unimpaired | Deemed to Accept |
| 9 | Abuse Related Contingent Claims | Impaired | Deemed to Reject |
| 10 | Shaela Evenson Claim | Impaired | Accepted |
| 11 | Deposit and Loan Fund Claims | Impaired | Accepted |
| 12 | Province Contribution Claim | Impaired | Accepted |

**F.**     Burden of Proof.  The Plan Proponents have met their burden of proving the elements of Section 1129 of the Bankruptcy Code by a preponderance of the evidence, which is the applicable standard.

### Compliance with the Requirements of Section 1129 of the Bankruptcy Code

**G.**     Plan Compliance – Section 1129(a)(1).  The Plan complies with all applicable provisions of the Bankruptcy Code.  The Plan designates twelve (12) separate Classes of Claims.  The Plan adequately and properly classifies all Claims required to be classified and thus satisfies the requirements of Sections 1122 and 1123(a)(1) of the Bankruptcy Code.  Under the Plan, eight (8) Classes of Claims are impaired and four (4) Classes of Claims are not impaired.

**H.**     No election for application of Section 1111(b)(2) of the Bankruptcy Code by any Class of secured creditors was made under Bankruptcy Rule 3014.

**I.**     Section 1123(a)(8) does not apply because the Debtor is not an individual.  The Plan contains other provisions for implementation that are reasonable and consistent with Sections 1123(a)(7) and 1123(b) of the Bankruptcy Code.

**J.**     Proponent Compliance – Section 1129(a)(2).  The Plan Proponents have complied with the applicable provisions of the Bankruptcy Code and the Bankruptcy Rules.  The Balloting Agent, on behalf of the Plan Proponents, solicited acceptances of the Plan in accordance with the requirements of the Solicitation Procedures Order, the Bankruptcy Code, and the Bankruptcy Rules.  The Ballots of holders of Claims entitled to vote on the Plan were properly solicited and tabulated, as described in the Voting Declaration.  The Plan Proponents have further complied with all the provisions of the Bankruptcy Code and the Bankruptcy Rules governing notice of the Confirmation Hearing, approval of the Disclosure Statement and all other matters considered by the Court in this Chapter 11 Case.  The record in this Chapter 11 Case further discloses that the

Plan Proponents have attempted in good faith to comply with the Orders of the Court entered during the pendency of the Chapter 11 Case and that the Plan Proponents have not violated any such Orders.

**K.**  Good Faith – Section 1129(a)(3).  The Plan has been proposed in good faith by the Plan Proponents and not by any means forbidden by law.  No person has filed a valid objection to confirmation of the Plan on the grounds that the Plan was not proposed in good faith or by any means forbidden by law.  Accordingly, pursuant to Bankruptcy Rule 3020(b)(2), the Court may determine compliance with Section 1129(a)(3) of the Bankruptcy Code without receiving evidence on such issues.  The Court has examined the totality of the circumstances surrounding the formulation of the Plan and the evidence submitted in connection with the Confirmation Hearing.  The Plan has been accepted by all of the impaired classes of impaired Claims entitled to vote by margins far in excess of those required by the Bankruptcy Code.  Such acceptance evidences the informed judgment of Creditors that the Plan is in their best interests.  The Plan was proposed with the legitimate and honest purpose of maximizing the value of the Debtor's Estate and to effectuate a distribution of such value to Creditors.  The Plan was negotiated in good faith and at arm's-length between and among Representatives of the Plan Proponents and certain other key Creditors and parties in interest during this Chapter 11 Case.  Therefore, the Plan has been proposed in good faith, as such term is used in Section 1129(a)(3) of the Bankruptcy Code.

**L.**  Plan Payments – Section 1129(a)(4).  All amounts to be paid by the Debtor or its Estate for services or expenses in this Chapter 11 Case have either been fully disclosed and approved as reasonable or, pursuant to the terms of the Plan, will be disclosed and subject to the approval of the Bankruptcy Court following confirmation of the Plan.  All expenses that the

Trust incurs after the Effective Date (including the fees and expenses of professionals retained by the Trust after the Effective Date) may be paid by the Trustee from the Trust Assets pursuant to the terms of the Plan and the Trust Agreement. Payment of pre-Effective Date Professional Fee Claims shall be governed by the terms of the Plan and shall be paid only upon application to the Bankruptcy Court. Professional Fee Claims of Professionals employed by the Committee that are incurred prior to the Effective Date in connection with the implementation and consummation of the Plan may be paid by the Trust in the Trustee's sole discretion.  Accordingly, the Plan satisfies the requirements of Section 1129(a)(4) of the Bankruptcy Code.

M.      Appointment of Trustee and Board of Trustees – Section 1129(a)(5).  The Plan provides for the appointment of Omni Management Acquisition Corp. ("**Omni**"), or any validly selected successor, as the Trustee of the Trust, to be retained as of the Effective Date, to oversee and administer the Trust pursuant to the terms of the Plan.  Based on the record of the Confirmation Hearing, it appears that Omni does not hold or represent an interest adverse to the Trust and that the appointment of Omni as the Trustee is consistent with the interests of Creditors and with public policy.  The Reorganized Debtor will continue to be managed as a corporation sole. The individuals identified in the declarations in support of confirmation of the Plan have been involved in management of the Debtor's affairs for many years.  Accordingly, the Plan satisfies the requirements of Section 1129(a)(5) of the Bankruptcy Code.

N.      Rates – Section 1129(a)(6).  There are no rates applicable to the Debtor over which any governmental regulatory commission will have jurisdiction after confirmation of the Plan.

O.      Best Interests – Section 1129(a)(7).  As set forth in the Disclosure Statement, each Holder of an Allowed Claim will receive under the Plan property of a value not less than the

amount such Holder would receive if the Debtor were liquidated under Chapter 7 of the Bankruptcy Code. A conversion of this Chapter 11 Case to Chapter 7 would likely be accompanied by a decrease in the amount of recovery that Creditors would receive on account of their Claims as a result of (a) the failure to implement certain settlements and (b) the commissions and additional administrative fees and expenses that would be incurred during a Chapter 7 case. Thus the Plan provides a superior recovery to Creditors than conversion of this Chapter 11 Case. No election for application of Section 1111(b)(2) of the Bankruptcy Code by any Class of Secured Creditors was made under Bankruptcy Rule 3014. The Plan thus is in the best interests of Creditors under Section 1129(a)(7) of the Bankruptcy Code.

P.       Acceptance/Cramdown – Sections 1129(a)(8) and 1129(b). All holders of Claims impaired under the Plan have been given adequate opportunity to vote to accept or reject the Plan. The Plan has been accepted by the holders of Claims in Classes 4,5,6,10,11 and 12. No Holder of a Claim in Classes 7 and 9 voted on the Plan. However, inasmuch as Classes 7 and 9 are deemed to have rejected the Plan by operation of law, and no Claimant in Classes 7 and 9 submitted a vote, the Plan Proponents have not satisfied the requirements of Section 1129(a)(8) of the Bankruptcy Code requiring "acceptance" by all impaired classes.

Q.       Nonetheless, the Plan may be confirmed in this Chapter 11 Case notwithstanding the failure of Classes 7 and 9 to submit any votes on the Plan and the deemed rejection of Classes 7 and 9 because the Plan Proponents satisfy the "cramdown" requirements of Section 1129(b) of the Bankruptcy Code. Section 1129(b) requires that a plan must not discriminate unfairly and must be fair and equitable as to each class of claims or interests that is impaired under, and has not accepted, the plan. As set forth below, the Plan satisfies these requirements:

9

a. Class 7 consists of Penalty Claims. The Plan does not discriminate unfairly against the holders of Penalty Claims because the Debtor is insolvent and holders of Penalty Claims would not receive more under a Chapter 7 liquidation than under the Plan since such claims would be subordinated under Chapter 7 of the Bankruptcy Code. The Plan also is fair and equitable as to Class 7, consistent with Section 1129(b)(2)(B)(ii) of the Bankruptcy Code, because no Claims of Creditors that are junior to Penalty Claims will receive or retain property under the Plan on account of such junior Claims. No distribution to holders of Penalty Claims is necessary to confirm the Plan, because (a) the Debtor is clearly insolvent, (b) Penalty Claims would be subordinated in a Chapter 7 case, and (c) there are no holders of Claims junior to Penalty Claims receiving a distribution.

b. Class 9 consists of Abuse Related Contingent Claims. In accordance with Section 502(e)(1) of the Bankruptcy Code, each Abuse Related Contingent Claim held by any Entity against the Debtor shall be disallowed and will receive no distribution under the Plan. Because Abuse Related Contingent Claims are disallowed under the Plan and the Bankruptcy Code, the treatment of such Claims under the Plan is fair and equitable and is not discriminatory. As such, no distribution to holders of such Claims is necessary to confirm the Plan.

**R.** <u>Administrative Expenses/Priority Claims-Section 1129(a)(9)</u>. The Plan provides that each Holder of an Allowed Administrative Claim against the Debtor shall receive, in full satisfaction, settlement, release and extinguishment of such Claim, cash equal to the Allowed amount of such Administrative Claim, either (a) on or as soon as practicable following the Effective Date, or, if later, the Allowance Date; or (b) upon such terms as may be agreed to in writing by the Administrative Claimant. Provided, however, that any Administrative Claim

10

incurred postpetition by the Debtor in the ordinary course of its operations or arising pursuant to one or more postpetition agreements or transactions entered into by the Debtor with Bankruptcy Court approval, shall be paid or performed in accordance with the terms and conditions of the particular transaction(s) and any agreement(s) relating thereto, or as otherwise agreed by the Debtor (if before the Effective Date) or the Reorganized Debtor (on and after the Effective Date), on the one hand, and the holder of such Administrative Claim, on the other.  Claims based on Abuse that happens after the Petition Date shall be paid in accordance with applicable non-bankruptcy law.

With respect to Professional Fee Claims, the Plan provides that Professionals requesting compensation or reimbursement of expenses pursuant to Sections 327, 328, 330, 331, 503(b) and 1103 of the Bankruptcy Code for services rendered prior to the Effective Date must file and serve an application for final allowance of compensation and reimbursement of expenses pursuant to the Plan, and such Professional Fee Claims will be paid upon allowance by the Court.

The Plan provides that with respect to each Allowed Priority Tax Claim not paid prior to the Effective Date, the Reorganized Debtor shall (i) pay such Claim in cash as soon as practicable after the Effective Date, or (ii) provide such other treatment agreed to by the Holder of such Allowed Priority Tax Claim and the Debtor (if before the Effective Date) or the Reorganized Debtor (on and after the Effective Date), as applicable, in writing, provided such treatment is no less favorable to the Debtor or the Reorganized Debtor than the treatment set forth in clause (i) of this sentence.

**S.**     <u>Impaired Class Acceptances – Section 1129(a)(10)</u>.  Eight (8) Classes of Claims are impaired under the Plan, and, as reflected in the Voting Declaration, the Plan has been accepted by at least one impaired Class without including the vote of any insider.

11

    **T.**    <u>Feasibility – Section 1129(a)(11)</u>.  The Plan complies with Section 1129(a)(11) of the Bankruptcy Code because under the Plan, the Trust or the Reorganized Debtor will convert the Debtor's assets to cash and distribute such cash pursuant to the terms of the Plan.  Pursuant and subject to the Plan, among other things:

    1.    Within ten (10) days after the Conditions to Effectiveness set forth in Section 11.1 (a), (b), and (c) of the Plan have occurred, the Reorganized Debtor will pay to the Trust the sum of $2,550,015.82.

    2.    Within ten (10) days after the Settling Insurers receive written notice from the Trustee that the Conditions to Effectiveness set forth in Section 11.1 (a), (b), and (c) of the Plan have occurred, the Settling Insurers will make payments to their respective attorneys' trust accounts as follows:

    a.    American Home:  Four Hundred Eighty Seven Thousand Five Hundred Dollars ($487,500);

    b.    Catholic Mutual: Three Million Eight Hundred Thousand Dollars ($3,800,000);

    c.    Fireman's Fund:  Four Million Dollars ($4,000,000);

    d.    Great American Insurance:  Three Million Five Hundred Thousand Dollars ($3,500,000);

    e.    MIGA:  Five Hundred Thousand Dollars ($500,000);

    f.    OneBeacon:  One Hundred Thousand Dollars ($100,000); and

    g.    Travelers: Two Million Dollars ($2,000,000).

    3.    Within ten (10) days after the Settling Insurers receive written notice from the Trustee that all of the Conditions to Effectiveness set forth in Section 11.1 of the Plan have

occurred, the Settling Insurers shall cause their respective attorneys to pay to the Trust the amounts deposited in the attorneys' respective trust accounts pursuant to Section 9.2.2 of the Plan.

4.        Within ten (10) days after the Conditions to Effectiveness set forth in Section 11.1(a), (b) and (c) of the Plan have occurred and the Confirmation Order includes the Province Channeling Injunction, the Province will make the Province Contribution in the amount of Four Million Four Hundred Fifty Thousand Dollars ($4,450,000) in cash to the Reorganized Debtor for distribution to the Trust of so much of the Province Contribution as the Debtor and the Committee have allocated to the Trust, but not less than $3,950,000.  Five Hundred Thousand Dollars ($500,000) of the $4.45 million Province Contribution shall be used for administrative expenses related to incorporation of the Province Settlement into the Plan and Disclosure Statement and the additional funding of the Future Tort Claims Reserve Fund by the Province.  Any remainder shall be delivered to the Trust for payment of Class 4 Claims.  The $500,000 may not be used for any other purpose.  Notwithstanding the foregoing, if the Confirmation Order does not include the Province Channeling Injunction and the Province Alternate Settlement is effective, the Province will make the Province Contribution in the amount $3,950,000 in cash to the Reorganized Debtor for distribution to the Trust, but the Province shall not be obligated to make the Province Contribution under the Province Alternate Settlement unless and until the Province has received an executed Province Release from each Claimant that asserted a Claim against the Province and the Province Litigation has been dismissed with prejudice.  The Province Contribution will be paid by the Province to Omni Management Group as escrow agent under the Escrow Agreement approved in the order confirming the Plan.  Upon Omni Management Group's receipt of the requisite releases and

dismissals of the Province Litigation, it shall release the cash to the Trust and dismissals to the Province.

5.      Within ten (10) days after the Conditions to Effectiveness set forth in Section 11.1(a), (b), and (c) of the Plan have occurred, the Debtor will be funded in the amount of $450,000.00 from Catholic Mutual and $14,000.00 from OneBeacon.  Such amounts will not be paid to the Trust, but will be paid directly to the Debtor.

6.      The Debtor has funded the Deposit and Loan Fund Restoration Trust.

7.      The Placid Enterprises, LLC Loan will fund approximately $2,490,000 to the Reorganized Debtor;

8.      The sale of the Legendary Lodge will generate net sale proceeds of approximately $3,568,000 to the Reorganized Debtor;

9.      The Reorganized Debtor's projected operating revenues will provide the Reorganized Debtor with sufficient assets to meet its obligations under the Plan and to pay the expenses it will incur in the ordinary course of business.

Based on the foregoing and the terms of the Plan, confirmation is not likely to be followed by the need for further financial reorganization of the Debtor or the Trust.

U.      Fees Payable Under 28 U.S.C. § 1930 – Section 1129(a)(12).  Section 4.3 of the Plan provides for the payment of statutory fees due pursuant to 28 U.S.C. § 1930(a)(6), until the entry of a final decree or an order converting or dismissing this Chapter 11 Case.

V.      Retiree Benefits – Section 1129(a)(13).  The Debtor is obligated to provide "retiree benefits" within the meaning of Section 1114(a) of the Bankruptcy Code.  The Plan provides for the continuation of retiree benefits at levels that comply with 11 U.S.C. § 1114 for

the period the Debtor has obligated itself to provide such benefits.   Accordingly, Section

1129(a)(13) of the Bankruptcy Code is satisfied in this Chapter 11 Case.

        **W.**      <u>No Domestic Support Obligations – Section 1129(a)(14)</u>.   The Debtor is not

required by a judicial or administrative order, or by statute, to pay domestic support obligations.

Accordingly, Section 1129(a)(14) of the Bankruptcy Code is inapplicable to this Chapter 11

Case.

        **X.**      <u>Distribution in Case of Individual Debtor – Section 1129(a)(15)</u>.   The Debtor is

not an individual, and accordingly, Section 1129(a)(15) of the Bankruptcy Code is inapplicable

to this Chapter 11 Case.

        **Y.**      <u>No Applicable Nonbankruptcy Law Regarding Transfers – Section 1129(a)(16)</u>.

All transfers of property under the Plan are being made in accordance with any applicable

provisions of nonbankruptcy law that governs the transfer of property by a corporation that is not

a moneyed, business or commercial corporation or trust.

        **Z.**      <u>Only One Plan – Section 1129(c)</u>.   The Plan is the only plan filed in this Chapter

11 Case, and accordingly, Section 1129(c) of the Bankruptcy Code is inapplicable to this Chapter

11 Case.

        **AA.**      <u>Principal Purpose of the Plan – Section 1129(d)</u>.   The principal purpose of the

Plan is not the avoidance of taxes or the avoidance of the application of Section 5 of the

Securities Act of 1933, thereby satisfying the requirements of Section 1129(d) of the Bankruptcy

Code.

        **BB.**      <u>Good Faith Solicitation – Section 1125(e)</u>.   Based on the record before the Court

in this Chapter 11 Case, (i) the Plan Proponents are deemed to have solicited acceptances of the

Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code,

including without limitation, Sections 1125(c) and (e) of the Bankruptcy Code, and any applicable nonbankruptcy law, rule or regulation governing the adequacy of disclosure in connection with such solicitation and (ii) the Plan Proponents, and all of their respective members, officers, directors, agents, financial advisers, attorneys, employees, equity holders, partners, affiliates, and representatives shall be deemed to have participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code in the solicitation of the Plan and are entitled to the protections afforded by Section 1125(e) of the Bankruptcy Code and Section 12.5 ("Exculpation and Limitation of Liability") of the Plan.

**CC.**  Satisfaction of Confirmation Requirements.  Based upon the foregoing, the Plan satisfies the requirements for confirmation set forth in Section 1129 of the Bankruptcy Code.

**DD.**  Releases and Injunctions.  The litigation commenced by Tort Claimants that predated the Chapter 11 Case was the primary cause in the Debtor's filing of the Chapter 11 Case.  Because it would be impractical to divide the Policies, it was necessary for the Diocese to obtain the Diocese Parties' participation in the Insurance Settlement Agreements.

1.  The releases and injunctions provided pursuant to Section XII of the Plan are critical components of the Plan and the settlements embodied therein and each of the Protected Parties thereunder has made a substantial contribution to the Plan and the Estate.

2.  The payments by the Settling Insurers under the Insurance Settlement Agreements and the payment by the Province under the Province Settlement are critical and significant contributions to the success of the Plan, and the Plan would not be feasible without such contributions.

3.  Resolution of this Chapter 11 Case would not have been possible without such releases and injunctions, and the Protected Parties, including the Diocese Parties, the

Settling Insurers and the Province, would not have made any contribution to the Plan without obtaining such releases and injunctions.

4.     The Diocese Parties would not release their interests under the Policies unless they obtained the benefits of the injunctions under the Plan, because to do so may have left them exposed to Channeled Claims, whether or not such Claims are valid and whether or not coverage exists under the Settling Insurers' Policies for such Claims.

5.     The Settling Insurers' payments under the Insurance Settlement Agreements provide good and valuable consideration to the Trust, and enable Unsecured Creditors such as the holders of Tort Claims and Channeled Claims to realize increased distributions on their Claims.  The Insurance Settlement Agreements are necessary to the Plan because they provide significant funds for the Plan.  Therefore, the injunctions and releases in the Plan are essential components of the Plan.

6.     The Creditors, including the Tort Claimants, have overwhelmingly voted in favor of the Plan and have executed the releases contained in the Ballots.

7.     The Plan provides a mechanism for the distribution to the classes affected by the injunction and the Province Contribution enables the Holders of Abuse Claims against the Debtor and/or the Province to realize increased distributions on their Abuse Claims.

8.     Each of the payments by the Province pursuant to the Province Settlement constitutes a critical contribution to the success of the Plan, and the Plan would not be feasible without such  contributions because, among other things, if the Province Contribution Claim was Allowed in the full amount that the Province contends, the  Debtor would be unable to pay the Province Contribution Claim.

17

9.      The Province would not accept the proposed treatment of its Claims against the Debtor, waive its alleged rights under the Policies, or waive its right to object to the Insurance Settlement Agreements, among other things, unless the Debtor, the Committee and certain counsel to the Tort Claimants signed the Term Sheet and agreed to the include and support the Province Channeling Injunction in the Plan.

10.      The Province Contribution provides good and valuable consideration to the Trust, and enables Province Claimants to realize increased Distributions on their Claims.

11.      The Province Settlement is therefore an essential component of the Plan.

12.      The Province Settlement in the amount of $4.45 million is necessary to the Plan because it provides significant funding for the Plan, therefore the injunction in the Plan is a significant component of the Plan.

13.      The Province is not, and shall not be deemed to be, a successor to the Debtor by reason of any theory of law or equity or as a result of the consummation of the transactions contemplated in the Province Settlement, the Plan, the Plan Documents or otherwise.

14.      The Province shall not assume, or be deemed to have assumed, any liabilities or other obligations of the Debtor.

For all of the foregoing reasons, this Chapter 11 Case presents unique circumstances where the injunctions in the Plan and the release of non-debtors, including the Diocese Parties (including the Province) and the Settling Insurers and the imposition of the injunctions are proper and appropriate.

18

**EE.**   Indemnifications:

1.   As a condition to the payments under the Insurance Settlement Agreements, the Settling Insurers required the Diocese to indemnify them from any Claims as set forth in the Insurance Settlement Agreements;

2.   The indemnifications by the Diocese are essential components of each of the Insurance Settlement Agreements; and

3.   The injunctions in the Plan and in the Insurance Settlement Agreements will ensure that the indemnifications by the Diocese do not prevent the Diocese from obtaining a fresh start in the Case, and therefore the injunctions in the Plan and in the Insurance Settlement Agreements are necessary to the Plan.

**FF.**   Other than purchases of the Polices pursuant to the Insurance Settlement Agreements, the Settling Insurers did not purchase any other assets of the Diocese and the Settling Insurers are not a continuation of the Diocese or engaging in a continuation of the Diocese's business.   The Settling Insurers shall not have any responsibility or liability with respect to any of the Diocese's other assets.

**GG.**   None of the Settling Insurers are, and shall not be deemed to be, a successor to the Diocese by reason of any theory of law or equity or as a result of the consummation of the transactions contemplated in the Insurance Settlement Agreements, the Plan, or otherwise.   The Settling Insurers have not assumed, or be deemed to have assumed, any liabilities or other obligations of the Diocese.

19

**HH.** Scope of Discharge.   The limitations on the Debtor's discharge are a critical component of the Plan and the settlements embodied therein, and are appropriate under the circumstances.

DATED:  March 5, 2015

TERRY L. MYERS

U. S. BANKRUPTCY JUDGE

20