UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MONTANA

| | |
|---|---|
| In Re:<br><br>Roman Catholic Bishop of Helena, Montana, a Montana Religious Corporation Sole,<br><br>Debtor-In-Possession | Chapter 11<br><br>Case No. 14-60074 |

**ORDER CONFIRMING SECOND AMENDED JOINT PLAN OF REORGANIZATION PROPOSED BY THE ROMAN CATHOLIC BISHOP OF HELENA, MONTANA, AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS**

A hearing was held before this Court on March 4, 2015 (the "**Confirmation Hearing**"), to consider confirmation of the Second Amended Joint Plan of Reorganization Proposed by the Roman Catholic Bishop of Helena, Montana, and the Official Committee of Unsecured Creditors (the "**Plan**")[Docket No. 473]. The Court has examined the record compiled in this Chapter 11 Case, and has considered, among other things: (i) the First Amended Plan of Reorganization Proposed by the Roman Catholic Bishop of Helena, Montana, and the Official Committee of Unsecured Creditors and all schedules and exhibits thereto (the "First Amended Plan") [Docket No. 418]; (ii) the Notice of Intended Amendments to First Amended Joint Plan of Reorganization [Docket No. 460]; (iii) the Disclosure Statement For First Amended Joint Chapter 11 Plan of Reorganization Proposed by the Roman Catholic Bishop of Helena, Montana, and the Official Committee Of Unsecured Creditors and all schedules and exhibits thereto [Docket No. 419]; (iv) the Plan Documents; (v) the Debtor's Memorandum In Support Of Confirmation Of First Amended Joint Chapter 11 Plan Of Reorganization Proposed By The Roman Catholic Bishop Of Helena, Montana [Docket No. 464]; (vi) Certification Of Catherine Nownes-Whitaker of Omni Management Acquisition Corp. With Respect To Solicitation and Tabulation of Votes with Respect to the First Amended Joint Plan of Reorganization Proposed

1

by the Roman Catholic Bishop of Helena, Montana, and the Official Committee of Unsecured Creditors [Docket No. 463]; (vii) the Certificate of Service of Solicitation Package, Ballot and Release [Docket No. 448];  (viii) the Affidavit Re: of Service by Publication of Docket Nos. 424 and 426-4 [Docket No. 458] and (ix) the offers of proof, declarations in support of confirmation of the Plan [Docket Nos. 464-1 and 464-2], evidence admitted and the arguments and representations of counsel at the Confirmation Hearing.  Based upon the foregoing, the Findings Of Fact And Conclusions Of Law Regarding Second Amended Joint Plan Of Reorganization Proposed By The Roman Catholic Bishop Of Helena, Montana And The Official Committee Of Unsecured Creditors entered in connection with this Order and it appearing that no party has filed an objection to confirmation of the Plan, and after due deliberation and sufficient cause appearing therefor:

IT IS HEREBY ORDERED:

1. **Confirmation**.  The Plan is confirmed.  All modifications to the Plan described at the Confirmation Hearing are approved.  A copy of the Plan, incorporating the Plan Proponents' amendments to the First Amended Plan, is attached as **Exhibit A**.[1]  All formal and informal objections, responses, statements, and comments in opposition to the Plan, other than those withdrawn with prejudice in their entirety prior to the Confirmation Hearing or by way of stipulation and order with the Plan Proponents or resolved on the record during the Confirmation Hearing are overruled for the reasons stated on the record.  The Plan Proponents may (a) take such actions as may be necessary or appropriate to carry out the Plan and (b) execute such documents and instruments as required to implement the Plan including, without limitation, the Trust Agreement.

---

[1] Unless defined otherwise herein, terms used in this Order shall have the meanings and definitions set forth in the Plan.

2. <u>Binding Effect of Plan</u>. Immediately upon the entry of this Order, the terms of the Plan, the Plan Documents, all exhibits thereto and all other relevant and necessary document are approved, effective and binding upon the Plan Proponents, the Diocese Parties, the FCR, the Settling Insurers, the Trust, any and all Entities acquiring property under the Plan, any and all holders of Claims and Interests, any and all non-debtor parties to executory contracts, and any and all Tort Claimants, Future Tort Claimants, and other creditors, whether or not such creditor has filed a proof of Claim in this Chapter 11 Case, whether or not the Claim of such creditor is impaired under the Plan, and whether or not such creditor has accepted or rejected the Plan, and any other interested parties and all respective heirs, executors, administrators, successors or assigns, if any, of any of the foregoing parties. All Entities shall act or refrain from acting as set forth in the Plan.

3. <u>Authority</u>: By entry of this Order, all matters provided for under the Plan that would otherwise require approval of the officers, members, directors, or managers, of the Debtor under the Plan, shall be deemed to have occurred and shall be in effect prior to, on or after the Effective Date (as appropriate), pursuant to the applicable law of the state of Montana, in which the Debtor or the Trust is chartered, organized or incorporated, with no requirement of further action by the officers, members, directors, or managers, of the Debtor.

4. <u>Omission of Reference to Particular Plan Provisions</u>. Failing to specifically describe or include any provision of the Plan in this Order shall not diminish or impair the effectiveness of such provision, as this Court intends that the Plan be approved and confirmed in its entirety. Each provision of the Plan shall be deemed authorized and approved by this Order and shall have the same binding effect of every other provision of the Plan, whether or not

3

mentioned in this Order. If any inconsistencies occurs between the Plan and this Order, this Order shall govern.

5. <u>Discharge</u>. On the Effective Date, the Debtor will be discharged from all liability for all Claims that arose before the Confirmation Date, including all interest, if any, on any such Claims and debts, whether such interest accrued before or after commencement of this Case, including all Tort Claims (except as provided in Section 12.1 of the Plan) and from any liability of the kind specified in Sections 502(g), 502(h), and 502(i) of the Bankruptcy Code, whether or not (a) a proof of Claim is filed or is deemed filed under Section 501 of the Bankruptcy Code; (b) such Claim is Allowed under the Plan; or (c) the holder of such Claim has accepted the Plan. Nothing in the Plan, the Plan Documents or this Order shall: (a) affect, impair, discharge or diminish the Debtor's indemnification obligations under the Insurance Settlement Agreements, which obligations are excepted from the Debtor's discharge, or (b) the Debtor's liability for Abuse happening after the Petition Date, which liability is excepted from the Debtor's discharge.

6. Notwithstanding anything in the Plan, Plan Documents or this Order, the obligations the Diocese and any successor in interest may have under any environmental laws, including any liability the Diocese and any successor in interest may have for future remediation costs at the Hart Oil Refinery Comprehensive Environmental Cleanup and Responsibility Act facility located off of California Street in Missoula, Montana shall not be subject to discharge, release, waiver, or exculpation pursuant to the Plan or this Confirmation Order and shall not be enjoined by the Plan or this Confirmation Order.

7. <u>Cancellation of Notes, Instruments, and Debentures</u>. On the Effective Date, except to the extent provided otherwise in the Plan, all notes, instruments, debentures, certificates and other documents evidencing Claims shall be cancelled and deemed terminated

and surrendered (regardless of whether such notes, instruments, debentures, certificates or other documents are surrendered for cancellation to the appropriate indenture trustee or other such Entity).  The holders of or parties to such canceled notes, and other agreements and instruments shall have no rights against the Debtor, its Estate or the Trust arising from or relating to such notes, and other agreements and instruments or the cancellation thereof, except for the rights provided to the holders of Claims under the Plan and this Order.

8. <u>Appointment of Trustee</u>.  The Roman Catholic Bishop of Helena Trust Agreement attached as Exhibit E to the Plan is approved.  Omni Management Group, LLC ("Omni") is appointed as the Trustee of the Trust from and after the Effective Date.  As the Trustee, Omni will be an officer of the Bankruptcy Court, with the immunities customarily enjoyed by bankruptcy trustees.  The Bankruptcy Court will have sole jurisdiction over claims and causes of action against Omni and its members, officers, directors, employees, professionals, agents, heirs and assigns (solely in Omni's capacity as the Trustee) arising out of performing its duties, and Omni (in such capacity) may not be sued, or have claims asserted against it, in any other forum without leave of this Court.  The Trustee and any professionals retained by the Trustee may be compensated by the Trust for any services provided to or for the Trust prior to the Effective Date.

9. <u>Distributions Under the Plan</u>.  All Distributions under the Plan shall be made under Section X of the Plan and any other relevant Plan provisions. The classification of Claims for Distributions shall be governed solely by the terms of the Plan.  The classifications on the ballots tendered to or returned by the holders of Claims for voting on the Plan (a) were set forth on the ballots solely to vote to accept or reject the Plan, (b) do not represent, and in no event shall be deemed to modify or otherwise affect, the actual classification of such Claims under the

5

Plan for distribution, (c) may not be relied upon by any creditors as representing the actual classification of such Claims under the Plan for Distribution, and (d) shall not be binding on the Plan Proponents, the Trust or the Trustee for purposes other than voting on the Plan.

10. <u>Withholding and Reporting Requirements</u>. Each holder of an Allowed Claim to receive a Distribution under the Plan shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any governmental unit, including income, withholding, and other tax obligations, for such distribution. Subject to Section 9.5 of the Plan, the Trustee and the Trust have the right, but not the obligation, to not make a Distribution until such Holder has made arrangements satisfactory to the Trustee in his reasonable discretion for payment of any such tax obligation.

11. <u>Vesting of Estate Assets</u>. Except as otherwise provided herein or in the Plan, and as of the Effective Date of the Plan, under Sections 1141(b) and 1141(c) of the Bankruptcy Code, all property of the Debtor's Estate and all property dealt with by the Plan is vested in the Trust or the Reorganized Debtor free and clear of all Liens, Interests and Claims of creditors of the Debtor.

12. <u>Applicability of section 1146 of the Bankruptcy Code</u>. In accordance with Section 15.4 of the Plan, under Section 1146(a) of the Bankruptcy Code, the delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan, whether occurring prior or subsequent to the Confirmation Date, including any deeds, bills of sale or assignments executed in connection with any disposition of assets contemplated by the Plan (*i.e.* the Properties), shall not be subject to any stamp tax, real estate transfer tax, excise tax, sales tax, use tax or other similar tax.

13. <u>Assumption of Remaining Executory Contracts and Unexpired Leases</u>. Subject to the requirements of Section 365 of the Bankruptcy Code and under Section XIII of the Plan, all executory contracts and unexpired leases of the Debtor not rejected by order of the Bankruptcy Court or that are not the subject of a motion to reject pending on the Confirmation Date will be deemed assumed by the Reorganized Debtor on the Effective Date.

14. <u>Disputed Claims</u>. Section X of the Plan regarding procedures for resolving Disputed Claims are approved.

15. <u>Causes of Action/Objections</u>. Except as provided in Sections 10.3 and 10.9 of the Plan, the Reorganized Debtor shall retain and exclusively enforce the Debtor's Causes of Action, whether arising before or after the Petition Date, in any court or other tribunal, including, without limitation, a bankruptcy court adversary proceeding filed in the Chapter 11 Case. The Reorganized Debtor shall have the exclusive right, authority, and discretion to institute, prosecute, abandon, settle, or compromise all such Causes of Action, without obtaining Bankruptcy Court approval.

16. <u>Deadline for Filing Professional Fee Claims</u>. Professionals requesting compensation or reimbursement of expenses under Sections 327, 328, 330, 331, 503(b) and 1103 of the Bankruptcy Code for services rendered prior to the Effective Date must file and serve an application for final allowance of compensation and reimbursement of expenses no later than forty-five (45) days after the Effective Date. All such applications for final allowance of compensation and reimbursement of expenses will be subject to the authorization and approval of this Court. Such final fee applications shall also be served on all parties entitled to notice thereof no later than forty-five (45) days after the Effective Date.

17. <u>United States Trustee Fees</u>.  All fees due under 28 U.S.C. Section 1930 and not paid prior to the Effective Date shall be paid in Cash as soon as practicable after the Effective Date. After the Effective Date, the Reorganized Debtor shall pay quarterly fees to the U.S. Trustee, in Cash, until the Case is closed, and a Final Decree is entered.  In addition, the Reorganized Debtor shall file post-Confirmation Date reports in conformance with the U.S. Trustee guidelines.  The U.S. Trustee shall not be required to file a request for payment of its quarterly fees, which will be deemed Administrative Claims against the Debtor and the Debtor's Estate.

18. <u>Exculpation and Limitation of Liability</u>.  Except as expressly provided in the Plan, none of the Exculpated Parties will have or incur any liability to, or be subject to any right of action by, any Claimant, any other party in interest, or any of their respective Representatives, financial advisors, or Affiliates, or any of their successors or assigns, for any act or omission in or relating to this Case, including the exercise of their respective business judgment and the performance of their respective fiduciary obligations, the pursuit of confirmation of the Plan, or the administration of the Plan or the Trust, except liability for their willful misconduct or gross negligence (provided, however, the Debtor and Reorganized Debtor will be discharged from any such liability for such acts or omissions occurring prior to the Effective Date) and in all respects, such parties will be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities under the Plan or in the context of the Case.  Without limiting the generality of the foregoing, the Debtor and its members, financial advisors, and other professionals shall be entitled to and granted the benefits of Section 1125(e) of the Bankruptcy Code.  The Settling Insurers, the Province, the Reorganized Debtor, the Trust, the Trustee and professionals employed by the foregoing shall not have any liability to any Entity, including any

8

governmental entity or insurer, on account of payments made to a Tort Claimant, including any liability under the Medicare Secondary Payer Act.

19. <u>Releases</u>.

(a) In consideration of the monetary contributions provided by each Settling Insurer and other consideration to be provided by each Settling Insurer, the Debtor irrevocably and unconditionally, without limitation, releases, acquits, and forever discharges all Settling Insurers from any and all Claims and/or Causes of Action against any Settling Insurer, or the property thereof, except that the Debtor and Catholic Mutual shall retain all rights and obligations under any Claims-made certificates or policies of insurance issued or allegedly issued by Catholic Mutual to the Diocese Parties for a policy period July 1, 2014 through July 1, 2015, and the two immediately prior policy periods, *i.e.*, July 1, 2012 through July 1, 2013, and July 1, 2013 through July 1, 2014, other than with respect to Tort Claims, for which the Debtor has waived coverage and released Catholic Mutual.

(b) In consideration of the Province Settlement and other consideration provided and to be provided by the Province, the Debtor irrevocably and unconditionally, without limitation, releases, acquits, and forever discharges the Province from any and all Claims and/or Causes of Action against it or its property; provided, however, that if the Province Alternate Settlement is in effect at $3.95 million, the Debtor may assert any defense, recoupment, or setoff but only with respect to the Province Contribution Claim.

(c) A release executed by a personal representative of the estate of a Tort Claimant or by a court appointed representative of a Tort Claimant or by the holder of a general power of attorney binds the Tort Claimant's estate and his or her heirs or devisees and the Tort Claimant provided that the personal representative or other appointed representative has filed

9

with this Court an order of appointment. No distribution will be made to or for the benefit of a Tort Claimant whose release was executed by a personal representative until such personal representative has filed an order of appointment as provided in this Paragraph 19(c).

20. <u>Channeling Injunction</u>. In consideration of the undertakings of the Protected Parties pursuant to their respective settlements with the Debtor, the funding of the Trust, and other consideration, and to further preserve and promote the agreements between and among the Protected Parties and the protections afforded the Protected Parties and pursuant to Section 105 of the Bankruptcy Code:

(a) any and all Channeled Claims, excluding Claims against the Province, are channeled into the Trust and shall be treated, administered, determined, and resolved under the procedures and protocols and in the amounts as established under the Plan and the Trust Documents as the sole and exclusive remedy for all holders of Channeled Claims, excluding Claims against the Province; and

(b) all Entities who have held or asserted, hold or assert, or may in the future hold or assert, any Channeled Claim are hereby permanently stayed, enjoined, barred and restrained from taking any action, directly or indirectly, for the purposes of asserting, enforcing, or attempting to assert or enforce any Channeled Claim against any of the Protected Parties, excluding the Province, including:

> (i) commencing or continuing in any manner any action or other proceeding of any kind with respect to any Channeled Claim against any of the Protected Parties (excluding the Province) or against the property of any of the Protected Parties (excluding the Province);

(ii) enforcing, attaching, collecting or recovering, by any manner or means, from any Protected Parties (excluding the Province), or from the property of any Protected Parties, excluding the Province, with respect to any such Channeled Claim, any judgment, award, decree, or order against any Protected Parties (excluding the Province);

(iii) creating, perfecting or enforcing any lien of any kind against any Protected Parties (excluding the Province), or the property of any Protected Parties (excluding the Province) with respect to any such Channeled Claim; and

(iv) asserting, implementing or effectuating any Channeled Claim of any kind against:

  (1) any obligation due any Protected Parties (excluding the Province);

  (2) any Protected Parties (excluding the Province); or

  (3) the property of any Protected Parties (excluding the Province).

(v) taking any act, in any manner, in any place whatsoever that does not conform to, or comply with, the provisions of the Plan; and

(vi) asserting or accomplishing any setoff, right of indemnity, subrogation, contribution, or recoupment of any kind against any obligation due any of the Protected Parties (excluding the

Province,) or the property of the Protected Parties (excluding the Province).

21. <u>Injunction</u>.  All Entities are barred, estopped and enjoined from asserting any claims against the Policies or against the Settling Insurers relating to the Policies.

22. <u>Injunction</u>:  Any injunction contained in an Insurance Settlement Agreement is incorporated into the Plan by reference, is deemed fully set forth in the Plan and this Order, is approved and is in addition to the injunctions expressly set forth in the Plan.

23. <u>Supplemental Injunction Preventing Prosecution Of Claims Against Settling Insurers</u>.  Pursuant to Sections 105(a) and 363 of the Bankruptcy Code and in consideration of the undertakings of the Settling Insurers pursuant to the Insurance Settlement Agreements, including any of the Settling Insurers' purchases of Policies from the Diocese Parties free and clear of all Interests pursuant to Section 363(f) of the Bankruptcy Code, any and all Entities who have held, now hold or who may in the future hold any Interests (including all debt holders, all equity holders, governmental, tax and regulatory authorities, lenders, trade and other creditors, Tort Claimants, Future Tort Claimants, Perpetrators, Non-Settling Insurers, and all others holding Interests of any kind or nature whatsoever, including those Claims released or to be released pursuant to the Insurance Settlement Agreements) against any of the Protected Parties, Insured Entities, or the Policies, which, directly or indirectly, relate to, any of the Policies, any Tort Claims or any Related Insurance Claims, are hereby permanently stayed, enjoined, barred, and restrained from taking any action, directly or indirectly, to assert, enforce or attempt to assert or enforce any such Interest against the Settling Insurers, Insured Entities, and/or the Policies, including:

12

      (a)      Commencing or continuing in any manner any action or other proceeding against the Settling Insurers or the Insured Entities or the property of the Settling Insurers or the Insured Entities;

      (b)      Enforcing, attaching, collecting, or recovering, by any manner or means, any judgment, award, decree or order against the Settling Insurers or the Insured Entities or the property of the Settling Insurers or the Insured Entities;

      (c)      Creating, perfecting, or enforcing any lien of any kind against the Settling Insurers or the Insured Entities or the property of the Settling Insurers or the Insured Entities;

      (d)      Asserting or accomplishing any setoff, right of indemnity, subrogation, contribution, or recoupment of any kind against any obligation due the Settling Insurers or the Insured Entities or the property of the Settling Insurers or the Insured Entities; and,

      (e)      Taking any act, in any manner, in any place whatsoever, that does not conform to, or comply with, the provisions of the Plan.

24.    <u>Province Channeling Injunction</u>.  In consideration of the undertakings of the Province pursuant to its respective settlements with the Debtor, the funding of the Trust, and other consideration, and to further preserve and promote the agreements between and among the Province and the Plan Proponents and the protections afforded the Province, and pursuant to Section 105 of the Bankruptcy Code:

      (a)      any and all Province Channeled Claims against the Province are channeled into the Trust and shall be treated, administered, determined, and resolved under the procedures and protocols and in the amounts as established under the Plan and the Trust Documents as the sole and exclusive remedy for all Holders of Province Channeled Claims against the Province; and

(b)     all Entities who have held or asserted, hold or assert, or may in the future hold or assert, any Province Channeled Claim against the Province, or any of the other Diocese Parties, whether or not such Entity has received or will receive any Distribution under the Plan, are hereby permanently stayed, enjoined, barred and restrained from taking any action, directly or indirectly, for the purposes of asserting, enforcing, or attempting to assert or enforce any Province Channeled Claim against the Province, including:

(i)     commencing or continuing in any manner any action or other proceeding of any kind with respect to any Province Channeled Claim against the Province, or against the property of any of the Province;

(ii)    enforcing, attaching, collecting, or recovering, by any manner or means, from the Province, or from the property of the Province, with respect to any such Province Channeled Claim, any judgment, award, decree, or order against the Province;

(iii)   creating, perfecting or enforcing any lien of any kind against the Province, or the property of the Province, with respect to any such Province Channeled Claim; and

(iv)    asserting, implementing or effectuating any Province Channeled Claim of any kind against:

(1)    any obligation due the Province;

(2)    the Province; or

(3)    the property of the Province.

(v)     taking any act, in any manner, in any place whatsoever that does not conform to, or comply with, the provisions of the Plan;

14

(vi) asserting or accomplishing any setoff, right of indemnity, subrogation, contribution, or recoupment of any kind against any obligation due the Province or the property of the Province.

25. <u>Injunctions Shall Be Permanent; Existing Injunctions and Stays Remain in Effect Until Effective Date.</u>  On the Effective Date, the injunctions provided for in the Plan and this Order shall be deemed issued, entered, valid and enforceable according to their terms and shall be permanent and irrevocable and not subject to being vacated or modified.  All injunctions and/or stays provided for in the Plan and this Order, the injunctive provisions of Sections 524 and 1141 of the Bankruptcy Code, and all injunctions or stays protecting any Settling Insurer, which has purchased its Policies in a Section 363 Sale, are permanent and will remain in full force and effect following the Effective Date and are not subject to being vacated or modified. This Order will permanently enjoin the commencement or prosecution by any Entity, whether directly, derivatively or otherwise, of any Claims released or enjoined pursuant to the Plan.  The Insurance Settlement Agreements previously authorized by the Bankruptcy Court are hereby affirmed and any obligations of Debtor with respect to such Insurance Settlement Agreements are excepted from the Debtor's discharge and shall be assumed by the Reorganized Debtor and Trust, as applicable, on the Effective Date.

26. <u>Limitation of Injunction and Discharge</u>:  Notwithstanding any provision of the Plan, the foregoing injunctions and discharge preventing prosecution of Tort Claims against Protected Parties provides absolutely no protection to a Perpetrator.

27. <u>Approval of Settlement Agreements</u>:  In consideration of the classification, Distributions, and other benefits provided under the Plan, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims and controversies resolved

pursuant to the Plan. The entry of this Order shall constitute the Court's approval of each of the agreements, compromises and settlements provided for in the Plan, including the following:

(a) The Settlement Agreement, Buy Back of Policies, Release of Claims and Covenant Not To Sue (Docket No. 430-1);

(b) The Settlement Agreement, Release, and Policy Buyback (Docket No. 332-1, Exhibit B);

(c) The Province Settlement Agreement (Docket No. 426-13, Exhibit H); and

(d) The Escrow Agreement, dated as of February 27, 2015 by and among the plaintiffs in the Whalen Case and the Does Case and Province and Omni Management Group in the capacity of escrow agent, attached as **Exhibit B**.

28. The Insurance Settlement Agreements are binding on the Trust, the Reorganized Debtor, and any successors of the Trust or the Reorganized Debtor. Pursuant to the Insurance Settlement Agreements, the Diocese is authorized to sell the Policies to the Settling Insurers free and clear of all Interests of all Entities.

29. The Claims, if any, that the Centers for Medicare & Medicaid Services of the United States Department of Health and Human Services ("**CMS**"), might have against the Settling Insurers relating to Claims paid by the Trust from the proceeds of the Insurance Settlement Agreements shall be paid solely by the Trust.

30. The Debtor shall take all necessary steps to dismiss the Coverage Litigation with prejudice.

31. Judgment Reduction.

(a) In any proceeding, suit or action involving any of the Diocese Parties or the Trust, as applicable, and one or more Non-Settling Insurers, where any Non-Settling Insurer

has asserted, asserts, or could assert any Contribution Claim against any Settling Insurer, then any judgment obtained by a Diocese Party or the Trust against such Non-Settling Insurer shall be automatically reduced by the amount, if any, that such Settling Insurer would have been liable to pay such Non-Settling Insurer as a result of the Non-Settling Insurer's Contribution Claim so that the Contribution Claim by such Non-Settling Insurer against the Settling Insurer is thereby satisfied and extinguished entirely.  The Diocese Parties and the Trust further agree that, in order to effectuate this clause in any action against a Non-Settling Insurer where the Settling Insurers are not parties, the Diocese Parties or the Trust, as applicable, shall obtain a finding from that court of what amount the Settling Insurers would have been required to pay such Non-Settling Insurer under its Contribution Claim, before entry of judgment against such Non-Settling Insurer.

(b)     In any settlement agreement between a Diocese Party or the Trust, as applicable, and one or more Non-Settling Insurers, where any Non-Settling Insurer has asserted, asserts, or could assert any Contribution Claim against a Settling Insurer, then any settlement amount agreed by the settling parties shall be automatically reduced by the amount, if any, that the Settling Insurer would have been liable to pay such Non-Settling Insurer as a result of the Non-Settling Insurer's Contribution Claim so that the Contribution Claim by such Non-Settling Insurer against the Settling Insurer is thereby satisfied and extinguished entirely.  In the event that the settling parties are unable to agree on the amount of the Contribution Claim being extinguished, the settling parties shall obtain a finding from a court of competent jurisdiction of what amount the Settling Insurer would have been required to pay such Non-Settling Insurer under its Contribution Claim.

32.     <u>Termination of Committee</u>.  On the Effective Date, the Committee shall cease to exist and its members, designated representatives and/or agents (including, without limitation,

attorneys, investment bankers, financial advisors, accountants and other professionals) shall, subject to those matters set forth below, be released and discharged from any further authority, duties, responsibilities and obligations relating to, arising from, or in connection with the Committee.

33. <u>Notice of Effective Date</u>.  The Debtor shall send via email a copy of this Order and a notice of the Effective Date to all Professionals retained by the Debtor and the Committee and employed at the expense of the Estate within five (5) business days after the occurrence of the Effective Date.

34. <u>Retention of Jurisdiction</u>. Notwithstanding the entry of this Order and the Effective Date, this Court shall retain and have exclusive jurisdiction after the Effective Date over any matter arising under the Bankruptcy Code, arising in or relating to this Chapter 11 Case or the Plan, including, without limitation, all categories specifically set forth in Section XV of the Plan (which provisions are incorporated by reference), in each case to the greatest extent permitted by applicable law.

        DATED:  March 5, 2015

        */s/ Terry L. Myers*

        TERRY L. MYERS
        U. S. BANKRUPTCY JUDGE